Petitioner Deborah J. Baugh asks this Court to review an order of Judge J. Richmond Pearson of the Circuit Court of Clarke County entered February 22, 1988, whereby she was held in contempt of court for refusing to answer questions on deposition following the assertion of her Fifth Amendment privilege against self-incrimination.
Petitioner sued Michael Earl Ledkins on July 8, 1987, alleging slander. On July 22, 1987, Baugh was served with a notice of the taking of her deposition, scheduled for August 11, 1987, at the office *Page 240 
of her attorney. Although Ledkins and his attorney were present for the taking of Baugh's deposition, Baugh failed to appear.[1]
Baugh asserts that she failed to attend and give testimony at this deposition upon the advice of counsel in light of a possible grand jury investigation against her.[2]
On August 17, 1987, Ledkins filed a motion for sanctions because of Baugh's failure to attend the scheduled deposition.[3]
Ledkins further moved that an order be issued compelling Baugh to attend and give testimony on deposition. The motion was accompanied by a notice of deposition set for August 21, 1987. On August 19, 1987, Baugh filed an objection to the motion for sanctions and moved the court to issue a protective order, asking that discovery be stayed pending the resolution of any criminal actions against Baugh. Baugh's motion for a protective order was denied on August 21, 1987, and the trial court ordered Baugh to submit to deposition.
Baugh appeared with her attorney at the scheduled deposition but refused to answer certain questions, which she maintains are pertinent to the pending criminal prosecution.[4] In refusing to answer, Baugh asserted her privilege against self-incrimination under the Fifth Amendment to the Constitution of the United States.
Ledkins then filed a motion for sanctions on August 26, 1987, seeking to have Baugh held in contempt of court and also seeking an award of attorney fees. A hearing was conducted by the trial court on February 19, 1988, where arguments were presented by counsel for both parties.
An order was subsequently issued by the trial court on February 22, 1988, holding Baugh in contempt of court for her refusal to give testimony at the scheduled deposition on August 21, 1987. Baugh was fined $250,[5] sentenced to five days in jail, and taxed costs and attorney fees in the amount of $392.90. Execution of the jail sentence was suspended pending Baugh's appearance and giving of testimony at a deposition set by the court for March 4, 1988. Petitioner was subsequently indicted by the grand jury of Clarke County during the 1988 spring term for theft of property in the first degree.
This petition followed on February 26, 1988. Petitioner seeks to have the trial court instructed to review and reverse its order of February 22, 1988. Baugh also *Page 241 
prays that the trial court be instructed to stay all discovery directed to Baugh in the civil lawsuit until resolution of the criminal case now pending against her. By order of this Court entered March 2, 1988, all proceedings in the trial court have been stayed pending a disposition of this petition.
 Issue
The dispositive issue presented for our review can be succinctly stated: Consistent with principles of the Fifth Amendment privilege against self-incrimination, can the petitioner here be compelled to testify in a civil proceeding while there is a parallel criminal action pending against her? Guided by federal constitutional principles, we think not and accordingly grant the relief set forth herein.
 I
At the outset, we would observe that a judgment of contempt of court is generally reviewable not by appeal, but by way of appropriate extraordinary writ. Oyler v. Gilliland,382 So.2d 517 (Ala. 1980). As to the propriety of a particular writ, the law in Alabama is quite clear that contempt proceedings are generally reviewable by writ of habeas corpus if the contemner is incarcerated and by writ of certiorari if the contemner is not incarcerated. Opinion of the Clerk, 381 So.2d 58 (Ala. 1980); Killingsworth v. Killingsworth, 284 Ala. 524,226 So.2d 308 (1969); Lovelady v. Lovelady, 281 Ala. 642, 206 So.2d 886
(1968).
In the instant case, Baugh is not incarcerated. It would therefore appear that, as to Baugh's prayer for relief from the judgment of contempt, relief by writ of mandamus is inappropriate. Indeed, Ledkins, through able counsel, urges that the petition fails to state a cause upon which relief can be granted and that the relief sought by Baugh cannot be compelled by "writ of mandamus." While we agree that mandamus is inappropriate as to the relief sought from the contempt judgment, we shall treat that part of Baugh's prayer for relief as a petition for writ of certiorari and we treat that petition as having been granted. See Klingler v. White, 465 So.2d 405
(Ala.Civ.App. 1984); Hall v. Hall, 485 So.2d 747 (Ala.Civ.App. 1986).
 II
We turn now to the dispositive issue presented in this case. Under the Fifth Amendment to the Constitution of the United States, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The privilege against self-incrimination must be liberally construed in favor of the accused or the witness, Hoffman v. United States, 341 U.S. 479,71 S.Ct. 814, 95 L.Ed. 1118 (1951), and is applicable not only to federal proceedings but also to state proceedings, Malloy v.Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). "The fact that the privilege is raised in a civil proceeding rather than a criminal prosecution does not deprive a party of its protection." Wehling v. Columbia Broadcasting System,608 F.2d 1084, 1086 (5th Cir. 1979), citing with approval Lefkowitz v.Cunningham, 431 U.S. 801, 91 S.Ct. 2132, 53 L.Ed.2d 1 (1977);McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed.2d 158
(1924). The test is whether the testimony might later subject the witness to criminal prosecution:
 "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."
Hoffman v. United States, supra, 341 U.S. at 486,71 S.Ct. at 818; accord, Malloy v. Hogan, supra.
In civil actions in Alabama, discovery is governed generally by Rule 26, A.R.Civ.P., which provides in pertinent part:
 "(b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
 "(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . *Page 242 
". . .
 "(c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition or production or inspection, the court in the circuit where the deposition or production or inspection is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." (Emphasis added.)
In urging us to hold that the trial court did not abuse its discretion by the terms of its order dated February 22, 1988, Ledkins correctly points out that under the Alabama Rules of Civil Procedure, broad power is vested in the trial court to control the use of the discovery process. Assured InvestorsLife Ins. Co. v. National Union Associates, Inc., 362 So.2d 228
(Ala. 1978). Indeed, where a party fails to provide or permit discovery as ordered, the choice of sanctions to be applied rests largely within the discretion of the trial court and reversal will not be warranted in the absence of abuse of discretion. Deaton, Inc. v. Burroughs, 456 So.2d 771 (Ala. 1984). These state-court procedural considerations must at all times yield, however, to relevant federal constitutional principles.
 III
We have found no reported decisions of the Alabama appellate courts dealing with this issue. The appropriate standards for determining whether to grant the relief sought by Baugh in the instant case are found, we believe, in two decisions of United States Courts of Appeals, the factual posture of each being strikingly similar to that of the instant case: Wehling v.Columbia Broadcasting System, supra, and Afro-Lecon, Inc. v.United States, 820 F.2d 1198 (Fed. Cir. 1987).
In Wehling, the plaintiff in a libel action, Carl D. Wehling, asserting his Fifth Amendment privilege against compelled self-incrimination, refused to answer questions submitted by the defendant on deposition. Wehling maintained that he was the target of a continuing grand jury investigation. Prior to the alleged libelous acts of the defendant, Wehling, the owner of several proprietary and trade schools, had been subpoenaed to appear before a federal grand jury investigating federally insured student loan programs. Wehling made five appearances before the grand jury and on each occasion he invoked his Fifth Amendment privilege against self-incrimination. In response to an order of the trial court to comply with the defendant's discovery request, Wehling filed a motion for a protective order. This motion was denied and Wehling was again ordered to submit to discovery. Following Wehling's continued refusal to comply on Fifth Amendment grounds, his action was dismissed with prejudice by the trial court. Wehling then appealed to the Fifth Circuit Court of Appeals, which reversed the decision of the trial court. Holding that the court abused its discretion in denying Wehling's motion for a protective order and dismissing his complaint, the Fifth Circuit found "no provision in the federal discovery rules which authorizes a court to impose sanctions on a party who resists discovery by asserting a valid claim of privilege." 608 F.2d at 1087. Noting that the trial court erred in concluding that the assertion by the plaintiff of his privilege against self-incrimination automatically required dismissal of his libel action, the Fifth Circuit wrote:
 "[D]ismissing a plaintiff's action with prejudice solely because he exercises his privilege against self-incrimination is constitutionally impermissible. Wehling had, in addition to his Fifth Amendment right to silence, a due process right to a judicial determination of his civil action. When the district court ordered Wehling to answer CBS' questions or suffer dismissal, it forced plaintiff to choose between his silence and his lawsuit. The Supreme Court has disapproved of procedures which require a party to surrender one constitutional right in order to assert another. Simmons v. United States, 390 U.S. 377, 394, 88 S.Ct. 967 [976], 19 L.Ed.2d 1247 (1968). Similarly, the Court has emphasized that a party claiming the *Page 243 
Fifth Amendment privilege should suffer no penalty for his silence:
 "`In this context "penalty" is not restricted to fine or imprisonment. It means, as we said in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 [(1965)], the imposition of any sanction which makes assertion of the Fifth Amendment privilege "costly."'
 "Spevack v. Klein, 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967). We agree with the Ninth Circuit's conclusion in Campbell v. Gerrans, 592 F.2d 1054, 1058 (9th Cir. 1979), that dismissing a party's action because he asserts his Fifth Amendment privilege makes resort to that privilege `costly.' See 8 C. Wright A. Miller, Federal Practice and Procedure, § 2018 at 148."
608 F.2d at 1088. The decision of the trial court was reversed and the case remanded with instructions to the court to enter a protective order staying discovery until the applicable criminal statute of limitations had run.
The case of Afro-Lecon, Inc. v. United States, supra, involved an action before the General Services Administration Board of Contract Appeals brought by a government contractor against the United States. The action arose out of disputes over a subcontract awarded to Afro-Lecon to supply filing cabinets to the General Services Administration (GSA). A settlement agreement reached between the parties terminated the contract and allowed Afro-Lecon to assert claims for payment for deliveries already made under the contract. A claim subsequently submitted by Afro-Lecon was denied by GSA and Afro-Lecon appealed to the GSA Board of Contract Appeals. GSA, in preparation for proceedings before the board, propounded interrogatories to Afro-Lecon. Following Afro-Lecon's failure to respond satisfactorily to this discovery request, a second set of interrogatories was issued, as well as a request for production of documents. Afro-Lecon objected to this second discovery request, and a motion to compel discovery filed by GSA was granted by the board. Responses provided by Afro-Lecon continued to be unacceptable to GSA and the board issued an order on accounting, setting out a deadline wherein Afro-Lecon was to provide a detailed account of its claim. Prior to the deadline imposed by the board, Afro-Lecon learned that it had become the subject of a grand jury probe investigating the civil claims it had filed before the board. Afro-Lecon then moved the board to suspend the civil proceedings pending before it. As grounds in support of that motion, Afro-Lecon maintained that officers and employees of the company who were key witnesses in the proceedings then pending before the board had been advised by counsel not to respond to discovery or to participate in the civil proceedings, in order to avoid incrimination in the parallel criminal proceedings. Subsequent to the filing of this motion, the company and its president were formally notified by the United States Attorney that they were potential defendants in a grand jury investigation into whether the company had violated federal law by filing false claims. Some months later the board denied the motion for a stay of the civil appeal and ordered Afro-Lecon to respond to the order on accounting. Following the indictment of the company and its president a short time later, Afro-Lecon renewed its motion to stay the civil proceedings. The board denied the stay and dismissed the company's civil appeal. As the basis of its decision, the board concluded "that Afro-Lecon, as the party asserting the civil claim, could not use the fifth amendment as a basis to defer civil proceedings." 820 F.2d at 1200. Afro-Lecon appealed, and the Court of Appeals vacated the board's order. In considering the analysis to be employed in determining whether a stay of the civil proceedings should have been granted, the Court of Appeals noted:
 "The Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings. . . . A court, however, has the discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions `"when the interests of justice seem to require such action, sometimes *Page 244 
at the request of the prosecution, . . . sometimes at the request of the defense[.]"' . . . See also Landis v. North American Co., 299 U.S. 248, 254-55, 57 S.Ct. 163, 165-66, 81 L.Ed. 153 (1936) (decision to stay parallel proceeding `calls for the exercise of judgment, which must weigh competing interests and maintain an even balance') (citations omitted).
 "The court in [Securities Exchange Commission v. Dresser Industries, Inc., 628 F.2d 1368 (D.C. Cir.), cert. denied, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980),] assessed the Kordel opinion [United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970)] and noted that the circumstances that weigh in favor of granting a stay include malicious prosecution, the absence of counsel for defendant during depositions, agency bad faith, malicious government tactics, and `other special circumstances.' . . . The court in Dresser
interpreted these references in Kordell as requiring the court to make a case-by-case determination of whether to grant a stay of civil proceedings. . . . . Accord Attorney General of the United States v. Irish People, Inc., 684 F.2d 928, 953 (D.C. Cir. 1982) (noting and employing precedent that `balancing of the parties' interests is required [and] efforts at accommodation of both sides must be made') (citations omitted). . . . We agree with this flexible approach, and believe it is particularly appropriate where constitutional rights are in issue."
820 F.2d at 1202. (Citations omitted; emphasis supplied.) Concluding that a balancing of interests must occur, contrasting Afro-Lecon's interest in postponement of the civil proceedings with possible prejudice that might result to GSA if important evidence were lost over time, the Federal Circuit vacated and remanded the decision with instructions. On remand, the board was instructed to evaluate whether there was any additional danger of abuse of discovery, whether there was any likelihood that the civil case, if proceeded with, would interfere with the administration of criminal proceedings, and whether the requested postponement would create an appreciable risk of prejudice to Afro-Lecon's case before the board.
The instant case is indistinguishable from these two decisions, except for the fact that, in the present posture of this case, the sanction being applied is the sanction of contempt rather than the ultimate sanction of dismissal.
 IV
Balancing the interests of the parties upon our review of the facts and circumstances of this particular case, we conclude that Baugh showed sufficient justification for a protective order. Hence, it was an abuse of discretion for the trial judge to deny her motion and to find her in contempt of court for her refusal to comply with discovery requests.
We decline, however, to instruct the trial court to stay only discovery directed to the petitioner during the course of the civil proceedings, as she would have us do. A party may not file a lawsuit, thereby placing facts in issue, and then "wave the sword" of the Fifth Amendment to avoid disclosure of such facts, and still maintain the suit. Afro-Lecon, supra, at 1205. Accordingly, we remand this cause to the trial court with instructions to enter an appropriate protective order stayingall proceedings in the pending slander action until such time as the parallel criminal proceedings have been resolved. The civil proceeding, if not deferred, might undermine Baugh's Fifth Amendment privilege against self-incrimination.Securities Exchange Commission v. Dresser Industries, Inc.,628 F.2d 1368, 1376 (D.C. Cir.), cert. denied, 449 U.S. 993,101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Such an order will not place Ledkins in the posture of having to maintain a defense without necessary discovery.
In balancing the interests of the parties, we would also point out that our decision does not preclude the trial court *Page 245 
from dismissing Baugh's civil action at some future time if "crucial" avenues of discovery now available to Ledkins are shown to be closing during the stay.[6] Accord, Wehling, supra. The rationale for the propriety of such a drastic remedy has been explicitly noted:
 "Clearly, the process of discovery has become increasingly recognized as one of the primary and essential elements in making . . . court business flow and in contributing to the accomplishing of trial justice or settlement termination of litigation. The scales of justice would hardly remain equal in these respects, if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim. If any prejudice is to come from such a situation, it must, as a matter of basic fairness in the purposes and concepts on which the right of litigation rests, be to the party asserting the claim and not to the one who has been subjected to its assertion. It is the former who has made the election to create an imbalance in the pans of the scales."
Lyons v. Johnson, 415 F.2d 540, 542 (9th Cir. 1969), cert.denied, 397 U.S. 1027, 90 S.Ct. 1273, 25 L.Ed.2d 528 (1970).
That portion of the order of the trial court dated February 22, 1988, holding Baugh in contempt of court is reversed and the case is remanded with instructions to dismiss the contempt action. As to that portion of the trial court's order dated February 22, 1988, compelling Baugh to submit to questions on deposition, a writ of mandamus is granted and the Circuit Court of Clarke County is instructed to vacate its order and to enter an appropriate protective order consistent with this opinion.
CONVICTION OF CONTEMPT REVERSED; WRIT OF MANDAMUS GRANTED; AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.
[1] Baugh maintained in the proceedings below that her attorney personally gave notice to counsel for Ledkins that Baugh was invoking her Fifth Amendment privilege against self-incrimination and would therefore not be available for deposition without a court order. This assertion is not disputed by Ledkins on appeal.
[2] The basis of Baugh's invocation of the Fifth Amendment privilege was clearly set forth in her objection to the motion for sanctions:
 "[Baugh's] attorney has talked with Ronnie F. Keahey, Assistant District Attorney, and has been informed that evidence will be presented to the Grand Jury on August 24, 1987, and there is a possibility that Deborah J. Baugh will be indicted by the Grand Jury at that time."
The existence or nonexistence of criminal proceedings is immaterial, however, to assertion of the privilege: If a party reasonably apprehends a risk of self-incrimination, he may claim the Fifth Amendment privilege although no criminal charges are pending against him and even if the risk of prosecution is remote. Wehling v. Columbia Broadcasting System,608 F.2d 1084 (5th Cir. 1979), treated infra, this opinion.
[3] In his brief to this Court, Ledkins contends that Baugh "waived" her right to exercise the privilege against self-incrimination by failing to appear at the deposition. There being no disclosure of a fact or transaction, however, Baugh cannot be deemed to have waived the privilege. SeeInternational Bhd. of Teamsters v. Hatas, 287 Ala. 344,252 So.2d 7 (1971); Vail v. Vail, 360 So.2d 985 (Ala.Civ.App. 1977), reversed on other grounds, 360 So.2d 992 (Ala. 1978).
[4] District Attorney Robert D. Keahey of the First Judicial Circuit was present at the deposition, having been subpoenaed by counsel for Baugh. An attempt to take a statement on the record from the district attorney was objected to by counsel for Ledkins. Although not explicitly indicated in her petition, Baugh presumably subpoenaed the district attorney to inquire about a grant of immunity from criminal prosecution: "For purposes of compelling testimony which otherwise would be privileged by the Fifth Amendment, all that is constitutionally required is a grant of use immunity." Rowe v. Griffin,676 F.2d 524, 527 (11th Cir. 1982).
[5] It should be noted that the maximum fine that can be imposed for the punishment of contempt is $100. § 12-11-30 (5), Ala. Code 1975.
[6] Although dismissal is generally unavailable as a sanction, as indicated by the Fifth Circuit Court of Appeals in Wehling, supra, the trial court is not precluded from using dismissal as a remedy to prevent unfairness to Ledkins. Dismissal may be used only as a remedy of last resort, however, where Baugh's refusal to submit to discovery is predicated on the exercise of a constitutional right.