The issue presented in this petition for a writ of mandamus is whether, given the principles of the Fifth Amendment privilege against self-incrimination, the trial court abused its discretion in denying the petitioners' motion for a stay of civil proceedings while there is a possibility of a criminal action being brought against them arising out of an ongoing investigation.
In February 1990, Leslie Sawyer was employed by Coastal Training Institute ("Coastal"). Elizabeth Kammer, a petitioner in this case, was the owner of Coastal and its president. Joe Cameron, another petitioner, was also an officer of Coastal.
Sawyer's complaint includes allegations that Coastal improperly withheld Pell grant refunds that belonged to the students. He allegedly notified the F.B.I., the inspector general of the Department of Education, SouthTrust Bank, and First American Savings of Longmont, Colorado, of these alleged improprieties. According to Sawyer, the petitioners engaged in various kinds of tortious conduct towards him when they learned that he had reported them to the authorities for the alleged improprieties in handling the Pell grant refunds.
Sawyer filed a civil action against the petitioners, alleging outrageous conduct, trespass, false imprisonment, and defamation, all arising out of an incident that allegedly occurred on the premises of *Page 980 
Coastal in 1989. He sued Kammer individually and as agent of Coastal. He sued Cameron only as the agent of Coastal.
In October 1990, when Sawyer noticed the deposition of Kammer and Cameron, they filed a motion to quash the depositions and to stay the proceedings, asserting their Fifth Amendment privilege against self-incrimination. See U.S. Const., amend. V; Ala. Const.1901, art. I, § 6. They maintained that they were the target of an F.B.I. investigation, presumably based upon the report by Sawyer. The judge denied the motion. Two months later, Sawyer proceeded to take their depositions. Upon the advice of counsel, both Kammer and Cameron invoked the Fifth Amendment and refused to answer any questions concerning the substance of the case.
The attorney for the petitioners then filed a motion to reconsider the denial of the stay of proceedings. In that motion, the attorney contended that he could not present a defense to Sawyer's claims against his clients because his clients would be unable to testify at trial because of the alleged ongoing criminal investigation. The judge also denied this motion. The petitioners state that the trial judge indicated that his reason for denying their motion for a stay was that no actual criminal charges had been filed against them. This petition followed.
By order of this Court entered March 30, 1991, all proceedings in the trial court have been stayed pending a disposition of this petition.
The petitioners request a stay of discovery and all proceedings before the circuit judge in the civil action in which they are defendants. They contend that they cannot defend themselves against Sawyer's claims without surrendering their constitutionally protected privilege against self-incrimination. They contend that their privilege against self-incrimination will be violated unless this Court grants the relief requested.
In answer to the petitioners' arguments that the trial court's refusal to stay the proceedings violates their privilege against self-incrimination, Sawyer argues that the writ of mandamus should not issue because the trial court has not abused its discretion. He says:
 "[T]he Petitioners have not attached any document either from the Office of the United States Attorney for the Southern District of Alabama, nor from the United States District Court for the Southern District of Alabama to indicate that a criminal investigation is ongoing or that criminal proceedings have actually been instituted against the Petitioners. In addition, there has been no factual showing by the petitioners that the stated criminal investigation actually involves or is related to the subject matter of the subject lawsuit."
The Fifth Amendment to the Constitution of the United States provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." We recognize that cases hold that the Fifth Amendment privilege also applies in civil proceedings, including depositions. See Ex parteBaugh, 530 So.2d 238 (Ala. 1988) (citing Wehling v. ColumbiaBroadcasting System, 608 F.2d 1084, 1086 (5th Cir. 1979), citing with approval Lefkowitz v. Cunningham, 431 U.S. 801,97 S.Ct. 2132, 53 L.Ed.2d 1 (1977); McCarthy v. Arndstein, 266 U.S. 34,45 S.Ct. 16, 69 L.Ed. 158 (1924)). Years ago, Justice Brandeis wrote:
 "The government insists, broadly, that the constitutional privilege against self-incrimination does not apply in any civil proceeding. The contrary must be accepted as settled. The privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it. The privilege protects a mere witness as fully as it does one who is also a party defendant."
McCarthy v. Arndstein, 266 U.S. at 40, 45 S.Ct. at 17.
While the Constitution does not require a stay of civil proceedings pending the outcome of potential criminal proceedings, a court has the discretion to postpone civil *Page 981 
discovery when "justice requires" that it do so "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c), Ala.R.Civ.P. The scope of discovery in a civil case is broad and requires nearly total mutual disclosure of each party's evidence before trial. See Rule 26. In contrast, criminal "discovery" is highly restricted. "The broad scope of civil discovery may present to both the prosecution, and at times the criminal defendant, an irresistible temptation to use that discovery to one's advantage in a criminal case." Afro-Lecon, Inc. v. UnitedStates, 820 F.2d 1198, 1203 (Fed. Cir. 1987). In Afro-Lecon, the court pointed out some of the dangers presented by this situation:
 "Such unconstitutional uses may begin with the surreptitious planting of criminal investigators in civil depositions . . . and end with passive abuses, such as when the civil party, who asserts fifth amendment rights, is compelled to refuse to answer questions individually, revealing his weak points to the criminal prosecutor. This point-by-point review of the civil case may lead to a 'link in the chain of evidence' that unconstitutionally contributes to the defendant's conviction. Hoffman v. United States, 341 U.S. 479, 486 [71 S.Ct. 814, 818, 95 L.Ed. 1118] (1951)."
In contrast to the opinion of the trial court and to Sawyer's contentions, the pendency of criminal charges is not necessary to the assertion of the privilege. It is a general rule that the petitioner need not be indicted to properly claim the Fifth Amendment privilege. Ex parte Baugh, 530 So.2d 238; Wehling,608 F.2d 1084; Lefkowitz, 431 U.S. 801, 97 S.Ct. 2132;McCarthy, 266 U.S. 34, 45 S.Ct. 16; Savannah Sur. Associates,Inc. v. Master, 240 Ga. 438, 439, 241 S.E.2d 192, 193 (1978);In re Master Key Litigation, 507 F.2d 292, 293 (9th Cir. 1974).
This Court has adopted this general rule in several recent cases. In Baugh, Deborah Baugh failed to appear for her deposition and, instead, invoked her privilege against self-incrimination in light of a possible grand juryinvestigation against her. This Court held that the trial court abused its discretion by denying Baugh's motion for a protective order until the resolution of the potential criminalproceedings against her. The Court expressed the rule as follows:
 "If a party reasonably apprehends a risk of self-incrimination, he may claim the Fifth Amendment privilege although no criminal charges are pending against him and even if the risk of prosecution is remote."
Baugh at 240, n. 2, citing Wehling v. Columbia BroadcastingSystem, 608 F.2d 1084 (5th Cir. 1979).
In Ex parte White, 551 So.2d 923 (Ala. 1989), this Court followed Baugh and again held that the privilege against self-incrimination required that the petitioner's civil action be stayed until the criminal process against him was completed. The Court noted that in balancing the interests of the parties, we must favor the constitutional privilege against self-incrimination over the interest in avoiding the delay of a civil proceeding.
In urging us to hold that the trial court did not abuse its discretion by the terms of its order dated February 19, 1991, Sawyer correctly points out that under the rules of civil procedure, broad power is vested in the trial court to control the use of the discovery process. However, as we noted inBaugh, "[t]hese state-court procedural considerations must at all times yield . . . to relevant federal constitutional principles. Baugh at 242.
Weighing the petitioners' interest in postponing the civil action against the prejudice that might result to Sawyer because of the delay, we are compelled to postpone it. From the facts presented on this petition, there is no doubt that most of the material facts in this civil action would also be material and potentially incriminating in the criminal action. As we stated in Ex parte White, "This solution is the only method of guaranteeing [the petitioners'] Fifth Amendment privilege." Ex parte White at 925. *Page 982 
Sawyer argues that "utter chaos would ensue" if we adhered to the position taken by the petitioners in this case. He says:
 "In the future, all a civil defendant has to do is assert that he or she apprehends that he or she is or may be subject to a criminal investigation and invoke the Fifth Amendment privilege. Then, the trial judge would be required to stay the case, perhaps indefinitely, until someone advises the court that the criminal matter has been resolved or that the applicable criminal statute of limitations has expired."
This particular concern was expressly addressed in Hoffman v.United States, 341 U.S. 479, 486-87, 71 S.Ct. 814, 818,95 L.Ed. 1118 (1951). Clearly, it is not for the witness, but for the court to determine whether the fear of incrimination is well founded:
 "[T]his protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself — his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, and to require him to answer if 'it clearly appears to the court that he is mistaken.' However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' " (Citations omitted.)
341 U.S. at 486-87, 71 S.Ct. at 818.
What were the circumstances that the trial court should have considered in ruling upon the petitioners' claim of privilege? As indicated by the petition, although the trial judge indicated that his reason for denying the petitioners' motion was that no actual criminal charges had been filed, the trial judge had sufficient evidence before him to clearly reveal that a criminal investigation was ongoing. Attached to the petitioners' motion to quash the depositions and to stay the proceedings were the affidavits of attorney Richard D. Horne, who represents Coastal and Kammer in the federal investigation, and attorney David A. Hamby, Jr., who represents the petitioners in the civil action.
Horne's affidavit stated that representatives of the Department of Education and the F.B.I. seized "most if not all documents of Coastal Training Institute including computers and memory" as a part of their criminal investigation "into certain activities of Elizabeth Kammer and Coastal Training Institute." Hamby's affidavit stated:
 "I have been informed by Mrs. Kammer that there is currently a federal criminal investigation pending in the U.S. Attorney's office concerning certain allegedly illegal activities of Elizabeth Kammer and Coastal Training Institute. According to Attorney Richard Horne, . . . most, if not all of Coastal's records and files were seized by the F.B.I., Department of Justice, or both. The discovery of potential witnesses and defense counsel's efforts to investigate the claims of Mr. Sawyer in his civil action have been seriously impeded due to the fact not only that the documents are unavailable to counsel, but that several potential witnesses have stated to counsel that they have already been questioned by the F.B.I. (or the Justice Department) concerning the criminal investigation and expressed their desire not to get involved in the lawsuit involving Les Sawyer and Coastal Training Institute.
 "Lastly, but more importantly, the information sought to be obtained by the plaintiff from Coastal's 30(b)(6) deponent is in no way relevant to the claims made *Page 983 
the basis of his lawsuit and is merely an attempt to cloud the issues in this case and prejudice the defendants."[1]
The information supplied in the affidavits regarding the seizure of records and the ability to defend the civil lawsuit was undisputed. A reading of the affidavits and other portions of the record makes it obvious that the material facts in this civil action would also be material and potentially incriminating in the criminal action. Certainly, there is the possibility that the information sought in the civil action may provide a "link in the chain of evidence" against the petitioners in a subsequent criminal action. SeeHoffman, 341 U.S. at 486, 71 S.Ct. at 818.
We hold that it was an abuse of discretion for the trial court to deny the petitioners' motion to stay the proceedings. Accordingly, we grant the writ of mandamus and instruct Judge Edward McDermott to vacate his February 19, 1991, order and to enter an appropriate protective order consistent with this opinion.
WRIT GRANTED.
HORNSBY, C.J., and HOUSTON, KENNEDY and INGRAM, JJ., concur.
[1] Sawyer's notice of deposition provided in pertinent part that he would take a pre-trial discovery deposition with regard to the following matters:
 "1. The policies and procedures of Coastal Training Institute with respect to refunding to students at Coastal Training Institute any monies received from said students pursuant to Pell Grants and not exhausted by said students for tuition, books, fees, supplies and related lawful expenses.
 "2. The policies and procedures of Coastal Training Institute with respect to the retention of Pell Grant monies received from students but not exhausted by said student for lawful purposes such as tuition, books, fees and supplies.
 "3. The policies and procedures of Coastal Training Institute with respect to the disposition of the excess funds described in Paragraphs One (1) and Two (2), supra.
". . . .
 "5. The status of any governmental investigation of Coastal Training Institute with respect to the handling of Pell Grant monies by Coastal Training Institute."