PER CURIAM.
Former Governor Guy Hunt[1] petitions this Court for a writ of mandamus directing Judge Eugene W. Reese of the Circuit Court of Montgomery County to vacate his order of July 28, 1993, compelling discovery and denying Hunt’s motion to stay all civil proceedings against him. We deny the petition.
Most of the relevant facts appear in published opinions already generated in previous actions. See Hunt v. Anderson, 794 F.Supp. 1557 (M.DAla.) (“Anderson II”), aff'd, 976 F.2d 744 (11th Cir.1992); Hunt v. Anderson, 794 F.Supp. 1551 (M.D.Ala.1991) (“Anderson I”); Hunt v. Window,, 604 So.2d 395 (Ala. 1992). In Anderson II, the court found and stated the following facts:
“The plaintiff, Guy Hunt, is Governor of the State of Alabama. He is also a member and an elder of the Primitive Baptist Church. On a number of occasions during the years 1987-1991, he spoke at religious services of the Primitive Baptist Church at various locations while traveling on state-owned aircraft at state expense. Elders in the Primitive Baptist Church preach at religious services and are not paid a salary for doing so. Often offerings, known as love offerings, are given by members in attendance at the religious services and distributed to the elders who preach. This is in keeping with the teachings of the Primitive Baptist Church. On the occasions in question, Governor Hunt accepted such offerings, as he had done when speaking as an elder of the Primitive Baptist Church for many years before becoming Governor. He kept the offerings for his own use until this practice became the subject of media attention in August, 1991, after which he paid over to the State of *967 Alabama the amounts he had received from such offerings.
[[Image here]]
“In August and September, 1991, a number of Alabama citizens filed complaints with the Ethics Commission charging that the Governor’s use of state aircraft to travel to religious services where he accepted donations of money was a violation of the State Ethics Law [Ala.Code 1975, §§ 36-25-1 through -80]. The State Ethics Commission gave the Governor notice of these complaints, an investigation was conducted by the Commission, and a hearing was held on September 20,1991.... After the hearing, the Commission, by a vote of 4-0, determined ‘that there was probable cause to believe that [the Governor] may have violated the State Ethics Law.’ The Commission forwarded its file to the Attorney General of Alabama ‘for his review and appropriate legal action.’”
Anderson II, at 1559-60.
On September 18, 1991, two days before the Ethics Commission’s hearing, Ralph Windom sued Hunt in his individual capacity and in his capacity as Governor of Alabama. Windom’s complaint alleged that Hunt had “used state personnel and various other resources,” including “a state airplane, bought and maintained with taxpayer’s money, to travel to various locations to ‘maintain his ministry.’” Windom contended that these acts “violated the Constitution of Alabama 1901, specifically Article I, § 3.” Windom, 604 So.2d at 395.[2] He sought a judgment declaring that these actions “were beyond [Hunt’s] authority as Governor of Alabama.” Id. “He also sought injunctive and equitable relief and an order requiring Governor Hunt to repay, return, or restore to the State of Alabama all taxpayers’ monies and resources expended in violation of law.” Id.
Following the commencement of Windom’s action and the Ethics Commission’s hearing, Hunt began an action in the United States District Court for the Middle District of Alabama, seeking a judgment declaring that a prosecution of him based on the Ethics Commission’s findings and recommendations would violate various provisions of the Constitution of the United States.[3] Anderson I, 794 F.Supp. at 1552. He also sought to enjoin the prosecution of such an action. Id. at 1553. On October 30, 1991, the court denied the defendants’ motion to dismiss the action for “failure to state a claim upon which relief may be granted,” see Fed.R.Civ.P. 12(b)(6), and denied Hunt’s motion for a preliminary injunction. Anderson I, 794 F.Supp. at 1557. Subsequently, “the parties proceeded with extensive discovery,” Anderson II, 794 F.Supp. at 1559 (emphasis added), which included the taking of Hunt’s deposition. Ultimately, the district court rejected Hunt’s claims, and, in its opinion released on May 28,1992, it granted the defendants’ motion for a summary judgment. Id. at 1568.
Concurrently with Hunt’s federal action, Windom’s action against Hunt proceeded in the Montgomery County Circuit Court. After this Court released its opinion in Hunt v. Windom, 604 So.2d 395 (Ala.1992), Windom sought to obtain from Ernst and Young, Hunt’s accountants, documentation for Hunt’s tax-return computations. He also resumed his attempts to depose Hunt. To these and other attempts at discovery, Hunt objected.
On December 28, 1992, a Montgomery County grand jury returned an indictment charging Hunt with violations of the Ethics Law. See Hunt v. State, 642 So.2d 999 (Ala.Crim.App.1993), aff'd, 642 So.2d 1060 (Ala.1994). On January 21, 1993, Hunt moved to stay Windom’s action pending disposition of that prosecution. On April 23, 1993, Hunt was convicted for “using his office *968 for direct personal gain in violation of Ala. Code 1975, § 36-25-5.” Hunt v. State, 642 So.2d at 1002.
On April 23, 1993, Hunt filed a brief in support of his January 21 motion to stay Windom’s action, arguing — for the first time — that civil discovery would subject him to the danger of self-incrimination, in derogation of rights guaranteed him by the Fifth and Fourteenth Amendments to the United States Constitution. Additionally, he submitted newspaper articles purporting to contain statements of Attorney General James Evans implying that Hunt’s use of the state’s airplane might result in another criminal prosecution for violation of provisions of the Ethics Law.
On July 28, 1993, the trial court denied Hunt’s motion to stay discovery and ordered the production of documents sought by Windom following the release of our opinion in Hunt v. Windom. On August 13,1993, Hunt petitioned this Court for a writ of mandamus directing the trial judge to vacate that order.
Hunt argues here, as he did in the trial court, that allowing civil discovery to proceed in the face of a possible criminal prosecution based on the same conduct challenged in the civil action would subject him to the danger of self-incrimination, in derogation of rights guaranteed him by the Fifth[4] and Fourteenth Amendments. He urges this Court to “order that respondent Judge Eugene W. Reese (a) vacate his order compelling discovery; and, (b) order that all discovery, or alternatively, prosecution of this case, be stayed pending resolution of the criminal prosecution and investigation.” Petition for Writ of Mandamus, at 12. In support of this request, he cites a number of cases in which this Court stayed civil proceedings in order to eliminate the danger of self-incrimination. See, e.g., Ex parte Coastal Training Institute, 583 So.2d 979, 980 (Ala.1991); Ex parte White, 551 So.2d 923 (Ala.1989); Ex parte Baugh, 530 So.2d 238 (Ala.1988).
In Baugh, a case of first impression in this Court, the petitioner sought an order directing the trial judge to vacate his order holding her in contempt of court for refusing to answer certain questions at a deposition and to vacate his order overruling the petitioner’s motion to stay discovery in the face of threatened criminal proceedings. Id. at 240. This Court “[b]alane[ed] the interests of the parties,” and concluded that the “facts and circumstances of [that] particular case” required the stay of all civil proceedings. Id. at 244.
White involved concurrent civil and criminal actions arising out of an incident in which White allegedly drove his automobile into the plaintiffs’ home. White was first indicted on charges of “leaving the scene of an accident in which he was involved, failing to render assistance to a victim of the accident, driving recklessly, and driving under the influence of alcohol or a controlled substance.” 551 So.2d at 923. Subsequently, a civil action was begun against White by occupants of the home, who sought damages for personal injuries and property damage. White initially failed to respond to interrogatories, and, when compelled to respond, objected to specific questions on Fifth Amendment grounds. Id. at 923-24. Additionally, he moved for an order staying proceedings in the civil action pending resolution of the criminal prosecution. The trial judge overruled the motion, holding that White had waived his Fifth Amendment privilege by selectively answering interrogatories. Id. at 924.
This Court granted White’s petition for a writ of mandamus and directed the trial judge to vacate his order denying the stay. Id. at 925. It first held that because White, when responding to the interrogatories, had asserted his claim to a Fifth Amendment privilege as to the questions he deemed to call for incriminating answers, he had not waived the privilege. Id. Moreover, as in Baugh, the Court balanced the interests of the parties and concluded that, under the circumstances, a stay of the proceedings was “the only method of guaranteeing White’s Fifth Amendment privilege.” Id.
In Coastal Training, the trial court refused to stay civil proceedings, on the ground *969 that “no actual criminal charges had been filed.” 583 So.2d at 980. This Court held that the trial court had abused its discretion. That holding was based on undisputed affidavit testimony indicating that federal law enforcement authorities had confiscated “most, if not all of [the petitioner’s] records and files” and had thereby “seriously impeded” the petitioner’s ability to defend itself in the civil action. Id. at 982-83.
Hunt requests relief solely on the basis of the holdings of these cases. Therefore, we interpret his petition as though it requested this Court to “order that respondent Judge Eugene W. Reese vacate his order compelling discovery, because all discovery, or alternatively, prosecution of this case, must be stayed pending resolution of the criminal prosecution and investigation.” See Petition for Writ of Mandamus, at 12.
Windom contends that Hunt has waived his right to an order staying these proceedings, because of his active and voluntary participation in discovery in the federal court. In this connection, we particularly note that the record in this mandamus action does not contain the contents of the deposition Hunt offered in his federal action or the contents of his responses to any other requests for discovery in that case.
In support of his waiver argument, Windom cites Ex parte Great Escapes Travel, Inc., 573 So.2d 278 (Ala.1990). There, Jan and Jack Daniel, as defendants in a civil action arising out of their management of ticket money collected by Great Escapes Travel, Inc., a travel agency, submitted to depositions in the action. When later indicted on charges arising out of the same operative facts, they moved to stay the civil proceedings on Fifth Amendment grounds. The trial court overruled their motion, and, without presenting to this Court the contents of their depositions, they petitioned this Court for a writ of mandamus directing the trial judge to vacate his order and to stay the proceedings.
This Court denied the petition. Id. at 281. In response to the respondents’ contention that the petitioners had waived their Fifth Amendment privileges, the Court explained: “We cannot evaluate the [petitioners’] claim ... without having the depositions before us. If their testimony was so obviously incriminating that a reasonable person would recognize that to give such testimony would be incriminating, that testimony might well constitute a waiver of the privilege.” Id. at 280. “Because the depositions are not before us,” the Court continued, we are not in a position to grant the petition.” Id. at 281.
In our view, Great Escapes controls this case. Hunt, like the petitioners in that case, did not assert his Fifth Amendment privilege when he was deposed. Indeed, in his federal action, he responded to “extensive discovery,'” Anderson II, 794 F.Supp. at 1559 (emphasis added). Hunt, like the petitioners in Great Escapes, has failed to provide us with the contents of his discovery responses. Thus, as in that case, we are unable to evaluate the respondent’s contention that the petitioner has waived his right to stay these proceedings.[5]
Of course, we do not suggest that Hunt’s participation in discovery in the federal action constitutes a blanket waiver of his privilege against self-incrimination in this case. The scope of waiver is restricted to the “details and particulars of [any] fact or transaction” that have been voluntarily disclosed. International Brotherhood of Teamsters v. Hatos, 287 Ala. 344, 361, 252 So.2d 7, 22 (1971); see also Great Escapes, 573 So.2d at 280. However, the record before us does not authorize the broad and extraordinary remedy Hunt seeks. Therefore, the petition is denied.
WRIT DENIED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, STEAGALL, KENNEDY, INGRAM and COOK, JJ., concur.

. Governor Hunt left office on April 23, 1993. See Hunt v. State, 642 So.2d 999 (Ala.Crim.App. 1993), aff'd, 642 So.2d 1060 (Ala. 1994).

. In Windom, this Court, pursuant to Ala. R.App.P. 5, permitted Hunt to appeal interlocutory orders of the trial court compelling him to produce all his state and federal income tax returns filed after January 25, 1987, and copies of the records forming the basis of the tax computations. Windom, 604 So.2d at 396. In its opinion issued on September 4, 1992, this Court affirmed the trial court's orders compelling production.

. The defendants in Hunt's action were "James Evans, as Attorney General of the State, and the Executive Director and members of the State Ethics Commission.” Anderson I, 794 F.Supp. at 1552.

. The Fifth Amendment provides that “[n]o person ... shall be compelled in any criminal case to be a witness against himself.” This “privilege also applies in civil proceedings, including depositions.” Ex parte Coastal Training Institute, 583 So.2d 979, 980 (Ala.1991).

. In fact, for all that appears from the federal court’s factual findings, many of which were based Hunt’s deposition, Anderson II, 794 F.Supp. at 1567, Hunt’s revelations of facts that would be relevant in any prosecution arising out of the alleged use of state airplanes were extensive.