I respectfully dissent. I assume, for the sake of argument, that the divorce case and the stalking prosecution are parallel proceedings.[7] Nevertheless, I would deny the petition.
"`The Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings. . . .'" Exparte Baugh, 530 So.2d 238, 243 (Ala. 1988) (quotingAfro-Lecon, Inc. v. United States, 820 F.2d 1198, 1202
(Fed. Cir.1987)). Instead, the trial court has broad discretion to grant or deny a stay of the civil proceedings. Ex parteCoastal Training Inst., 583 So.2d 979, 980-81 (Ala. 1991);see Landis v. North American Co., 299 U.S. 248, 254-55,57 S.Ct. 163, 81 L.Ed. 153 (1936) (whether to stay an action is within the trial court's inherent power to control its docket and requires an exercise of the trial court's judgment). In this case, the trial court acted within its discretion when it denied Bryan's motion to stay the divorce action pending the resolution of the criminal charges against him.
 I.
The Fifth Amendment to the United States Constitution, made applicable here through the Fourteenth Amendment, provides that no one "shall be compelled in *Page 390 
any criminal case to be a witness against himself." In the context of a civil action, this language prohibits a trial court from requiring a witness to answer a potentially incriminating question. Similarly, a trial court may not compel discovery of potentially incriminating information.
The main opinion relies primarily on three cases to support its conclusion that Bryan has a clear legal right to a stay of the divorce action. Each of the three is distinguishable from this case because each involved a genuine risk of compelled self-incrimination. In contrast, Bryan has failed to show that participating in a trial in the divorce action will violate hisFifth Amendment right by requiring any incriminating discovery or testimony.
This Court first confronted the question whether to stay a parallel civil proceeding in Ex parte Baugh, supra. InBaugh, a plaintiff in a civil action, facing a possible grand-jury investigation, was held in contempt for refusing to answer incriminating questions in a deposition. This Court reversed the contempt conviction and held that the plaintiff was entitled to a protective order preventing the defendant in the civil action from obtaining incriminating information through discovery, curing any Fifth Amendment problem. However, the protective order also placed the defendant "in the posture of having to maintain a defense without necessary discovery."530 So.2d at 244. As a result, the Court ordered the entire civil proceeding stayed to protect the defendant's interest.
In Ex parte Coastal Training Institute, supra, the defendants refused to answer potentially incriminating questions during a deposition. As it had in Baugh, the Court inCoastal Training Institute focused on the need to prevent the compelled discovery of potentially incriminating information:
 "While the Constitution does not require a stay of civil proceedings pending the outcome of potential criminal proceedings, a court has the discretion to postpone civil discovery when `justice requires' that it do so `to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.' Rule 26(c), Ala. R. Civ. P."
583 So.2d at 980-81. The Court's reasoning in Ex parteEbbers, 871 So.2d 776 (Ala. 2003), was similar:
 "Under Rule 26(b), Ala. R. Civ. P., parties are entitled to `obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action,' but under Rule 26(c) a party or other person from whom discovery is sought may obtain a protective order from the trial judge `for good cause shown.' (Emphasis supplied [in Ebbers].) These provisions vest broad power in the trial court to control the discovery process. Baugh, [Ex parte] White, [551 So.2d 923 (Ala. 1989),] and Coastal Training.
 ". . . A court has the discretion to stay civil proceedings, to postpone civil discovery, or to impose protective orders and conditions in the face of parallel criminal proceedings against one of the parties when the interests of justice seem to require. . . ."
871 So.2d at 787-88.
These cases stand for the proposition that the Fifth Amendment and Rule 26(c), Ala. R. Civ. P., prohibit the trial court from compelling discovery of incriminating information. This is a correct application of the privilege against self-incrimination. If the trial court had ordered Bryan to produce incriminating documents or had threatened to hold him in contempt for refusing to answer an incriminating question, I would join a decision to issue the writ of mandamus to protect his *Page 391 Fifth Amendment right against self-incrimination.
Neither of those scenarios, however, is present in this case. Discovery has long been complete, and the trial court has not ordered Bryan to answer any incriminating question. In fact, Bryan does not even really argue that he will have to incriminate himself at trial in the divorce action. Instead, he argues that, if he testifies at trial, he will have torefuse to incriminate himself.
By accepting Bryan's argument, the Court has extended the privilege against self-incrimination far beyond what is constitutionally required. Quoting Coastal TrainingInstitute, the main opinion characterizes as "self-incrimination" the possibility that Bryan will be "`compelled to refuse to answer questions. . . .'"583 So.2d at 981. Under this view, Bryan not only has the right to refuse to answer incriminating questions; he also has the right not.to be asked incriminating questions at trial. This is an accurate quotation from Coastal Training Institute but an incorrect statement of the law.[8] The Fifth Amendment privileges a witness "not to answer official questions put to him. . . ." Baxter v. Palmigiano, 425 U.S. 308,316, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (emphasis added). It does not protect the witness from being asked the questions in the first place, or (in a civil action) from the consequences of a refusal to answer. 425 U.S. at 318, 96 S.Ct. 1551 ("theFifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them").
Bryan's refusal to answer incriminating questions at the trial of the divorce action may or may not prejudice his position in that action. That was a valid equitable consideration in the trial court's deciding whether to grant a stay, but it does not directly implicate the Fifth Amendment. "That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination."Williams v. Florida, 399 U.S. 78, 84, 90 S.Ct. 1893,26 L.Ed.2d 446 (1970). Because *Page 392 
he may refuse to answer, the fact that Bryan may be asked a question the response to which could incriminate him presents noFifth Amendment issue.
 II.
In light of this analysis, I believe that the main opinion misstates the relevant inquiry in determining whether Bryan is entitled to a stay. The Court speaks of a balancing test in which Teresa's interest in an end to her divorce action is weighed against Bryan's Fifth Amendment right against self-incrimination. After "balancing" those interests, the main opinion reaches the conclusion: "Bryan's Fifth Amendment right against self-incrimination outweighs the other factors to be considered in the balancing test, including any potential prejudice to Teresa." 953 So.2d at 386.
It does — or, rather, it would — if there were actually a Fifth Amendment issue presented. If Bryan's participation at the trial of the divorce action really constituted compelled self-incrimination, he would have a constitutional right to a stay, regardless of the prejudice to Teresa. The main opinion correctly states that there is no constitutional right to a stay. By doing so, however, and by applying a balancing test, the main opinion tacitly acknowledges that something other than Bryan's Fifth Amendment right is at stake.
It is Bryan's interest in the divorce action — not the possibility of prejudice to his constitutional rights in a parallel criminal proceeding — that the Court must balance against Teresa's interests. In fact, this is precisely how Bryan has framed the issue. As he puts it, he does not want to have to invoke the privilege in the divorce proceeding because he wants to "receive all he is entitled to as a result of the divorce." This is a valid interest, but it implicates a constitutional right only in that the exercise of that right may (or may not) impede Bryan's arguments in the divorce proceeding.
 III.
In my judgment, the equities of this case clearly balance in Teresa's favor. Her personal interest in terminating an allegedly abusive marriage and moving on with her life could hardly be more compelling. By contrast, Bryan's interest is his wish to avoid the possibility that he may invoke the privilege against self-incrimination in the divorce proceeding; he believes that avoiding that possibility will help him receive the greatest possible share of the marital estate.
In deciding whether to grant a stay, the trial court was free to consider other factors. For example, Teresa's counsel has agreed to limit the scope of the evidence to reduce the possibility that Bryan will be asked questions that relate to the pending criminal charges. In Ex parte Oliver,864 So.2d 1064, 1067 (Ala. 2003), the plaintiffs' agreement to "modif[y] and limit their discovery in light of [the defendant]'s privilege against self-incrimination" was a sufficient basis to deny a petition for the writ of mandamus.864 So.2d at 1067. The trial court was also free to hold against Bryan the fact that he did not move to stay the action untilthe day before trial. Ebbers, 871 So.2d at 790. These factors further reinforce the conclusion that the equities of this case weigh in Teresa's favor.
Perhaps others would balance the equities differently than do I. Perhaps others in the trial court's position would grant Bryan's motion to stay the action. However, that is not the question that this Court has been asked to decide. Bryan is not entitled to the writ of mandamus unless he carries his burden of showing that the trial court clearly exceeded its discretion in denying *Page 393 
his motion to stay. The trial court is in a far better position than is this Court to know the status of its docket, the progress of the case to this point, and the likelihood that Bryan's motion is merely a stalling or negotiating tactic. There is every reason to allow the trial court broad discretion in this type of case.
 IV.
The trial court did not exceed its discretion by deciding that Teresa's interest in terminating an allegedly abusive marriage outweighed Bryan's interest in not having to invoke the privilege against self-incrimination during the divorce proceeding. Ironically, the main opinion would deny Teresa a final judgment in her divorce proceeding because of herallegations of abuse. In the circumstances of this case, the result the Court reaches is, I think, both illogical and unfair.
Teresa has a profound interest in concluding her divorce action, which has now been pending for nearly two years. The fact that Bryan may have to invoke his privilege against self-incrimination at trial in that action does not establish his clear legal right to stay the action or any part of it, I respectfully dissent.
[7] It is, however, not at all clear that this is so. The Court concludes that the divorce case and the stalking prosecution are parallel proceedings because "[t]o prove the stalking charge, the prosecution will possibly need to avail itself of evidence of alleged incidents and alleged abuse by Bryan that occurred before Teresa filed for divorce." 953 So.2d at 380. The basis for this statement is unclear, unless it is Bryan's conclusory statement in his brief that the stalking charge "will necessarily involve the allegations of abuse prior to the complaint for divorce. . . ." (Bryan's brief on original submission at 10.) However, Bryan's own reply brief
includes as an attachment a copy of Teresa's sworn statement alleging that Bryan made harassing telephone calls to her on October 30, October 31, and November 1, 2004. If proven, these facts could establish a pattern of harassment that took place after Teresa filed for divorce.
The indictment does not include the dates on which Bryan allegedly followed and/or harassed Teresa. However, the stalking charge is included in the same indictment with the charges of criminal mischief and criminal trespass, both based on an incident that occurred after Teresa had filed for divorce. This suggests that the stalking charge is also based on events that occurred after the divorce action was filed. See Rule 13.3(a)(2), Ala. R.Crim. P. (offenses may be joined in the same indictment if they are based on the same conduct or are otherwise connected in their commission). At best, Bryan has shown a possibility that the criminal and civil proceedings may be partially parallel.
[8] This language in Coastal Training Institute was taken verbatim from Afro-Lecon, Inc. v. United States, a Federal Circuit case. Afro-Lecon offered no authority for its statement that the Fifth Amendment protects one from being "`compelled to refuse to answer questions individually.'" The lone citation accompanying that statement inAfro-Lecon is to Hoffman v. United States,341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Hoffman
involved a contempt prosecution, not a request for a stay. Moreover, the case says nothing about being "compelled to refuse to answer" — a phrase that is something of a contradiction in terms.
The question of whether to stay a parallel proceeding is not a constitutional issue, and the United Stales Courts of Appeals have taken very different approaches in determining when a stay is required. It is unclear why the Court in Coastal TrainingInstitute decided to rely on a Federal Circuit decision. The Federal Circuit has extremely limited jurisdiction, with a focus on federal contracts, intellectual property, and international trade, 28 U.S.C. § 1295; it does not decide criminal cases. In contrast, the other federal courts of appeal routinely decide criminal cases and have vast expertise in matters of criminal law and procedure.
The Federal Circuit's approach as to when to grant a stay is in stark contrast with the approach taken by the United States Court of Appeals for the Eleventh Circuit. The latter will stay a parallel proceeding only if "the invocation of the privilege would result in `automatic entry of summary judgment.'"United States v. Premises Located at Route 13,946 F.2d 749, 756 (11th Cir.1991). Otherwise, "[d]efendants may exercise their Fifth Amendment rights by not presenting evidence which would implicate them in their criminal proceedings." ShellOil Co. v. Altina Assocs., Inc., 866 F.Supp. 536, 540
(M.D.Fla.1994).