SMITH, Justice.[1]
Joseph S. Antonucci is a defendant in an action filed in the Montgomery Circuit Court by Southern Health Systems, Inc. (“Southern Health”), a health-maintenance organization; Denise B. Azar, the court-appointed receiver for Southern Health; and D. David Parsons, Commissioner of Insurance for the Alabama Department of Insurance. Antonucci petitions this Court for a writ of mandamus compelling the trial court to stay proceedings in this case pending the resolution of a criminal inves *827 tigation into Antonueci’s activities as an employee of Southern Health. We grant the petition and issue the writ.

Facts and Procedural History

Antonucci is the former president and chief executive officer of Southern Health. In 2001 Southern Health became insolvent and entered into liquidation proceedings in the Jefferson Circuit Court. Azar was appointed as receiver for the insolvent Southern Health.
On June 28, 2002, Southern Health, Azar, and Parsons (hereinafter collectively referred to as “the plaintiffs”) sued Anto-nucci and other former officers of the corporation in the Montgomery Circuit Court.[2] The complaint alleged causes of action for, among other things, fraud, suppression, and breach of fiduciary duty. The plaintiffs alleged, among other things, that Antonucci and other employees of Southern Health charged expenses to the corporation that were not corporate expenses but were for their own personal benefit.[3] The plaintiffs further alleged that the defendants misrepresented to, or suppressed information from, the Alabama Department of Insurance regarding the financial condition of Southern Health. Finally, the plaintiffs contended that Anto-nucci had opened two bank accounts into which he deposited funds belonging to Southern Health that he then used for his personal use.
On the day the complaint was filed, the plaintiffs submitted a notice of deposition of Antonucci. In August 2002, the plaintiffs sent Antonucci interrogatories and requests for the production of documents. In October 2002, Antonucci served the plaintiffs with a request for the production of documents.
Antonucci replied to the plaintiffs’ interrogatories and production requests in January 2003. In March 2003 and again in October 2003 he was allowed to inspect certain documents held by the plaintiffs. Antonucci’s deposition was rescheduled numerous times; it was ultimately scheduled to take place on March 30, 2004.
In a motion dated March 15, 2004, Anto-nucci moved the trial court to stay all of the proceedings related to the action. The motion stated, in pertinent part:
“1. Movant Joseph S. Antonucci is a defendant in the above-styled matter. Counsel for the Movant has been informed that Antonucci is the ‘subject’ of an ongoing criminal investigation relating to his prior employment with Southern Health Systems, Inc.
“2. The issues set forth in plaintiffs’ complaint and the focus of the parallel criminal investigation overlap. Plaintiffs’ Complaint in this action focuses on allegedly improper conduct relating to Southern Health Systems, Inc. The allegations asserted in this action also form the basis of the criminal investigation.
“3. Any testimony that [Antonucci] might give in this civil action would be relevant to and could be used against him, in the ongoing criminal investigation. Accordingly, [Antonucci] reasonably apprehends a risk of self-inerimi-nation if he participates in broad civil discovery.
“4. When the facts material to claims asserted in a civil action would also be material in a pending criminal investigation and could prejudice the defendant’s *828 ability to exonerate himself, the civil defendant who is the ‘subject’ of a criminal investigation is entitled to a stay of all civil proceedings against him....
“WHEREFORE, [Antonucci] respectfully requests this Honorable Court to enter a protective order staying all proceedings in the civil action until such time as the parallel criminal proceedings have been resolved.”
Antonucci’s motion was supported by a brief and an affidavit by David McKnight, an attorney who represented Antonucci in connection with the criminal investigation. The plaintiffs filed a brief in opposition to the motion, and Antonucci filed a reply brief that included another affidavit by McKnight. A hearing on the motion was held by the trial court via a telephone conference; on April 13, 2004, the trial court denied the motion to stay. Antonuc-ci then filed this mandamus petition. On May 28, 2004, this Court stayed all proceedings in the trial court pending the disposition of this petition.

Discussion

I.

In Ex parte Ebbers, 871 So.2d 776 (Ala.2003), this Court undertook an extensive restatement of the law in Alabama regarding the ability of a party to stay a civil proceeding on Fifth Amendment grounds. Ebbers, the petitioner in that case, was the former president and chief executive officer of WorldCom, Inc., a telecommunications corporation. He was sued, along with other defendants, for allegedly “engaging] in various accounting machinations and irregularities and issuing] various materially misleading financial reports and statements.” 871 So.2d at 782. During the time of the civil action, Ebbers was the subject of an ongoing criminal investigation based on his conduct as an employee of WorldCom. Ebbers moved the trial court to stay the civil proceedings, arguing that, during discovery in those proceedings, he could be forced to choose between either waiving his Fifth Amendment right against self-incrimination, or invoking that right, which would allow his refusal to respond to be subject to adverse comment at trial. Ebbers thus maintained that he was entitled to a stay of the civil proceedings to preserve his Fifth Amendment rights. The trial court denied the motion for a stay, and Ebbers petitioned this Court for a writ of mandamus compelling the trial court to issue a stay.
This Court noted the following pertinent principles that had emerged from our case-law:
“1. A party is entitled to assert the Fifth Amendment privilege against self-incrimination although no criminal charges have been instituted, and even where the risk of prosecution is remote, so long as the party reasonably apprehends a risk of self-incrimination. A party need not be indicted to properly claim the Fifth Amendment privilege.
“2. When the Fifth Amendment privilege is asserted, it is for the trial court, not the party asserting the privilege, to determine whether the party’s apprehension of a risk of self-incrimination is reasonable and well-founded.
“3. The Fifth Amendment privilege applies in state-court civil proceedings, including depositions. A party cannot be compelled to testify or compelled to provide discovery in a civil proceeding while there is a parallel criminal action pending against the party.
“4. The United States Constitution does not automatically require a stay of civil proceedings pending the outcome of parallel criminal proceedings or potential parallel criminal proceedings.
“5. Whether to grant a stay to a party in a civil case who is the target of actual or threatened parallel criminal *829 proceedings must be determined by weighing and balancing the interest of the party moving for the stay in postponing the civil action against the prejudice to the other party that might result from delay.
[[Image here]]
“7. A court has the discretion to stay civil proceedings, to postpone civil discovery, or to impose protective orders and conditions in the face of parallel criminal proceedings against one of the parties when the interests of justice seem to require. Such interests include the need ‘to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense’ pursuant to Rule 26(c), Ala. R. Civ. P.
[[Image here]]
“11. A civil party’s Fifth Amendment right against self-incrimination cannot be adequately protected by requiring him simply to assert his right to remain silent when asked specific questions during a civil deposition; such an approach construes the Fifth Amendment too narrowly. The dangers in such an approach have been identified as including the possibility of a criminal investigator’s being ‘planted’ at the deposition, the revealing by the deponent of his weak points by his selection of which questions he refuses to answer, and the opportunity presented to a prosecutor of deriving, by a point-by-point review of the civil case, a ‘link in the chain of evidence’ that would unconstitutionally contribute to the defendant’s conviction in the criminal case.”
871 So.2d at 787-88 (final emphasis added; citations omitted).
This Court then noted eight factors that might properly enter into the weighing and balancing analysis:
“1. The interest of the plaintiff in proceeding expeditiously with the civil
litigation, or any particular aspect of it, and the potential prejudice to the plaintiff of a delay in the progress of that litigation.
“2. The private interest of the defendant and the burden that any particular aspect of the proceedings may impose on the defendant.
“3. The extent to which the defendant’s Fifth Amendment rights are implicated/the extent to which the issues in the criminal case overlap those in the civil case.
“4. The convenience of the court in the management of its cases, and the efficient use of judicial resources.
“5. The interest of persons not parties to the civil litigation.
“6. The interest of the public in the pending civil and criminal litigation.
“7. The status of the criminal case, including whether the party moving for the stay has been indicted.
“8. The timing of the motion to stay.”
871 So.2d at 789-90 (citations omitted). These factors often partially overlap, and not all of the factors are applicable in every case. 871 So.2d at 790.

II.

Antonucei maintains that, under Ebbers, he is entitled to a stay of the civil proceedings in the trial court. Specifically, he argues that he is the target of a parallel criminal investigation and that any further discovery — including the deposition that was scheduled to be taken two weeks after he filed his motion — would endanger his Fifth Amendment right against self-incrimination. Therefore, he maintains that the trial court exceeded its discretion in denying his motion to stay the civil proceedings and that he is entitled to a writ of mandamus compelling the trial court to *830 vacate its order denying his motion to stay. We agree.
A writ of mandamus is an extraordinary remedy that is available when a trial court has exceeded its discretion. Ex parte Fidelity Bank, 893 So.2d 1116, 1119 (Ala.2004). A writ of mandamus is “appropriate when the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.” Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001). The trial court held the hearing on Antonucci’s motion for a stay via telephone conference, and there is no indication that the trial court heard “live” testimony. Instead, it appears from the record that the trial court considered only the arguments presented by counsel and written eviden-tiary submissions. Thus, our review of the facts — and the application of the law to those facts — is de novo. Ebbers, 871 So.2d at 790. However, the purpose of our review is to determine only if the petitioner has. shown that the trial court exceeded the discretion accorded it in determining whether to grant the requested stay. Id.

III.

 Antonucci contends that his interest in staying the civil action outweighs any prejudice that the plaintiffs would suffer as a result of the stay. He further argues that he has demonstrated, under the factors discussed in Ebbers, that a stay is warranted. Although this Court in Eb-bers identified numerous factors that a court may consider in the weighing and balancing analysis undertaken to determine whether to stay civil proceedings in the face of parallel criminal proceedings, in reviewing the trial court’s determination we look only to those factors actually argued before the trial court. Ebbers, 871 So.2d at 792.
The affidavits of Antonucci’s criminal defense counsel, McKnight, indicate that Antonucci is the subject of a criminal investigation by the federal government. Specifically, McKnight stated that he had communicated with Torrence Bassard, an agent with the Federal Bureau of Investigation (“FBI”), who'confirmed that Anto-nucci was the “subject of an investigation by the federal government in connection with [Antonucci’s] duties as an officer, director and/or shareholder of Southern Health Systems, Inc.” According to McKnight, the criminal investigation stems from the very conduct complained of in the civil proceedings. Any testimony Anto-nucci would give in the civil proceedings, McKnight notes, would be relevant and useful in the criminal investigation.
Although “there does not have to be an existing criminal investigation to stay a civil proceeding on Fifth Amendment grounds, there' must be some evidence presented from which the trial court can determine that the person claiming the privilege has a reasonable apprehension of criminal prosecution.” Braden v. Jim Bishop Chevrolet, Inc., 897 So.2d 1040, 1047 (Ala.2004). In this case, McKnight’s affidavit clearly demonstrated the existence of an ongoing criminal investigation. See Ex parte Coastal Training Inst., 583 So.2d 979, 982 (Ala.1991) (noting that affidavits by defense counsel detailing an investigation by the FBI “clearly reveal[ed] that a criminal investigation was ongoing”).
Additionally, it is clear that there is significant overlap between the civil proceeding against Antonucci and the criminal investigation — both essentially focus on the same alleged conduct. Any testimony by Antonucci in the civil proceedings would be material and potentially incriminating in the criminal investigation. As McKnight states in his affidavit, if the civil *831 proceedings are not stayed Antonucci would be forced to choose between “asserting his Fifth Amendment rights or participating fully in the defense of this civil case.” We hold that Antonucci has demonstrated that he reasonably apprehended a risk of self-incrimination if the civil action were allowed to proceed.
The plaintiffs maintained before the trial court, however, that Antonucci’s interest in postponing the civil action did not outweigh the prejudice that they and others would suffer as a result of the delay. First, the plaintiffs argued that because Southern Health was involved in liquidation proceedings, a quick resolution of this case was required to satisfy the claims of its creditors and enrollees. Moreover, the plaintiffs alleged that Antonucci could use any delay in the civil proceedings to hide his assets. Antonucci, in response, maintained that the plaintiffs’ argument of prejudice was merely a generalized, speculative allegation that was unsupported by evidence.
The record does not reveal that any evidence regarding the status or details of the liquidation proceedings involving Southern Health was presented to the trial court. Therefore, the plaintiffs did not demonstrate that this argument has merit. Additionally, it is unclear how a further delay in this case would allow Antonucci to “hide” his assets or whether such an allegation merits concern in this case. Further, there was no evidence submitted in support of this allegation.
The plaintiffs further argued that, at the time of the hearing on the motion to stay, the case had been pending for almost two years and that the trial court had an interest in managing its docket and in preserving judicial resources. However, “when state concerns for judicial economy conflict with federal constitutional rights, the state concerns must give way.” Ex parte White, 551 So.2d 923, 924 (Ala.1989). While it is understandable that the trial court would want its docket to be up-to-date, it is unclear how suspending the proceedings in this case would deprive the trial court of judicial resources.
Additionally, the plaintiffs maintained that a stay was unnecessary because, they noted, Antonucci had already participated in other discovery. Specifically, in January 2003 Antonucci had filed responses to the plaintiffs’ interrogatories and requests for production.
As this Court has previously noted, participation in discovery could result in the waiver of the right to a stay if a party’s participation divulges incriminating testimony. See Ex parte Great Escapes Travel, Inc., 573 So.2d 278, 280 (Ala.1990) (“If [the defendants’] testimony was so obviously incriminating that a reasonable person would recognize that to give such testimony would be incriminating, that testimony might well constitute a waiver of the [Fifth Amendment] privilege [against self-incrimination]. On the other hand, if the testimony was not incriminating, no waiver occurred.”); see also Ex parte Hunt, 643 So.2d 966, 969 (Ala.1994). An-tonucci’s responses to interrogatories and to the requests for production, which are found in the record, consist mainly of objections and do not appear to divulge any potentially incriminating testimony.[4] Thus, no waiver has occurred.
Finally, the plaintiffs argued before the trial court that Antonucci’s delay in moving for a stay weighed against granting the motion. They stated in their opposition to the motion to stay:
*832 “The timing of Defendant Antonucci’s Motion to Stay indicates it is nothing more than a blatant delay tactic on the eve of a previously agreed upon deposition date. Defendant Antonucci did not move this Court to stay this proceeding at its onset nor within almost two years of the existence of the case. Further, Defendant Antonucci previously responded to written discovery without seeking a stay. The Plaintiffs would clearly be prejudiced by allowing the Defendant at this stage to request a stay.”
Antonucci argued, on the other hand, that the request for a stay was made at such a late date in the proceeding because discovery in this case had proceeded slowly.
The facts before us substantiate Anto-nucci’s statement that discovery in this case moved at a slow pace. Antonucci’s deposition was delayed numerous times because the documents the plaintiffs were to produce before Antonucci’s deposition, including a forensic audit, were not all delivered until February 2004.[5] Although Antonucci did wait almost 21 months after the action was filed before he filed his motion to stay, it is clear the motion was filed in an effort to avoid his much delayed deposition, in which he would have been required either to assert or to waive his Fifth Amendment right against self-incrimination. Furthermore, as noted above, his participation in other discovery did not waive his right to a stay. Nothing in the record indicates that Antonucci’s request for a stay was a delaying tactic; Antonucci could have asserted his right and requested a stay — thus delaying the case — at any time after he learned of the criminal investigation and reasonably apprehended a risk of self-incrimination if the civil action proceeded. See also generally Ex parte White, 551 So.2d 923, 925 (Ala.1989) (holding that the petitioner’s delay in asserting his Fifth Amendment rights did not result in a waiver of the right to stay the civil proceedings).[6] Finally, the plaintiffs did not demonstrate how a further delay would be prejudicial.
Antonucci reasonably apprehended the risk of self-incrimination if he participated in further discovery in this case. “[I]n balancing the interests of the parties, we must favor the constitutional privilege against self-incrimination over the interest in avoiding the delay of a civil proceeding.” Ex parte Coastal Training Inst., 583 So.2d at 981. Antonucci’s interest in postponing the proceedings in this ease clearly outweigh any purported prejudice that might result because of the delay. Therefore, the trial court exceeded its discretion in failing to stay the proceedings in the case. Accordingly, we grant the petition and instruct the trial court to vacate its order denying the motion to stay and to enter an appropriate order consistent with this opinion.
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and LYONS, WOODALL, and PARKER, JJ., concur.

. This case was originally assigned to another Justice and was subsequently reassigned to Justice Smith.

. According to the complaint, Parsons is a party to the action “pursuant to his statutory authority to institute and prosecute actions for the enforcement of the Insurance Code of the State of Alabama.’’

. Those expenses allegedly included charges for food, personal travel, lodging, clothing, and other personal items.

. It is unclear if the plaintiffs submitted these responses to the trial court in support of their opposition to Antonucci's motion to stay.

. Antonucci, through his attorney, consistently took the position that Antonucci would not submit to the deposition until the plaintiffs answered his request for the production of documents. The record demonstrates that at one point Antonucci was required to file a motion to compel the plaintiffs to respond to discovery requests; the trial court granted that motion in January 2003.

. Additionally, Antonucci’s response to the plaintiffs’ opposition to the motion to stay asserted that he had only "recently” learned of the criminal investigation.