MOORE, Judge.
In case no. 2091106, R.M. (“the mother”) appeals from a judgment entered by the Elmore Juvenile Court (“the juvenile court”) terminating her parental rights to her children, D.H.M. (a daughter born October 23, 2003), D.J.M. III (a son born May 13, 2005), and D.M.M. (a daughter born April 27, 2009) (hereinafter sometimes referred to collectively as “the children”). In case no. 2091130, D.J.M., Jr. (“the father”), appeals from the same judgment, which also terminated his parental rights to the children. In case no. 2100496, the father appeals from the denial of his motions, filed pursuant to Rule 60(b)(2) and Rule 60(b)(6), Ala. R. Civ. P„ seeking relief from the above-referenced judgment.[1] This court consolidated the appeals ex mero moto.

Background,

In November 2008, the Elmore County Department of Human Resources (“DHR”) became involved with the family following reports that D.H.M. was being physically abused. After multiple visits to the family’s home in November and December 2008, DHR began providing in-home rehabilitative services to the family.
On February 11, 2009, after investigating another report that D.H.M. had been abused, DHR also became concerned that the mother and the father were neglecting D.H.M. At that point, D.H.M. and D.J.M. III were removed from the mother’s and the father’s custody. The juvenile court awarded DHR temporary custody of D.H.M. and D.J.M. III, and they were placed in foster care.
On April 27, 2009, shortly after D.H.M. and D.J.M. III were removed from the custody of the mother and the father, the mother gave birth to D.M.M. D.M.M. was born prematurely, and the hospital reported to DHR that D.M.M. had tested positive for benzodiazepines at birth. Asserting that the mother could not produce a valid prescription for benzodiazepines or explain the presence of benzodiazepines in D.M.M.⅛ blood, DHR obtained custody of D.M.M. in June 2009.
On June 24, 2009, all three children were placed with their paternal aunt, J.L.C., and her husband, W.D.C., both of whom had been approved as foster parents in the State of Florida. On June 16, 2010, DHR *1198 filed petitions to terminate the parental rights of the mother and the father to the children, asserting, in pertinent part:
“9. The parents failed to provide for the material needs of the child[ren] or to pay a reasonable portion of [their] support;
“10. The parents have tortured, abused, cruelly beaten, or otherwise maltreated the child [ren];
“11. The child[ren] ha[ve] experienced unexplained serious injury under circumstances that would indicate that the injuries resulted from the intentional conduct or wilful neglect of the parent;
“12. [The mother] suffers from an emotional illness, mental illness, or mental deficiency of a duration or nature as to render her unable to care for the needs of her child[ren].”
A hearing on DHR’s petitions was scheduled for August 5, 2010.
On some unidentified date, the Elmore County District Attorney filed criminal charges against the mother and the father for felony child abuse based on their alleged physical abuse and willful neglect of D.H.M. On July 16, 2010, the father moved the juvenile court to stay the termination hearing, asserting that the pending criminal trial would materially alter his defense and trial strategy and that, unless the termination hearing was stayed until after the resolution of his criminal charges, his rights would be materially and unfairly prejudiced. The mother filed a similar motion. On July 20, 2010, the father requested that the juvenile court grant him leave to conduct discovery; DHR objected to that request. The juvenile court denied the mother’s and the father’s motions to stay the proceedings and the father’s motion for leave to conduct discovery.
On July 24, 2010, an Elmore County grand jury returned an indictment against the father, charging that the father “did torture, willfully abuse, cruelly beat or otherwise willfully maltreat [D.H.M.], a child under the age of eighteen (18) years by hitting the said child on the buttocks and legs, hitting the child in the head, and failing to provide for the basic needs of the child, in violation of Section 26-15-3, Code of Alabama, 1975.” The mother was also indicted on felony child-abuse charges; however, no copy of the indictment returned against the mother is in the record.
At the beginning of the August 5, 2010, termination hearing, counsel for the mother and the father again moved for a stay of the termination hearing, asserting that the mother’s and the father’s Fifth Amendment rights against self-incrimination warranted a stay. After hearing arguments in favor of and opposing those motions, the juvenile court denied the motion, stating that the children had been “in care” for 18 months and needed permanency; the termination hearing proceeded.
At the conclusion of the termination hearing, the juvenile court noted that it had previously found the children to be dependent and indicated that it intended to grant DHR’s petitions to terminate the parental rights of the mother and the father. On August 12, 2010, the juvenile court entered its judgment terminating the mother’s and the father’s parental rights to the children. In its judgment, the juvenile court found, among other things, that the mother had physically abused D.H.M. and D.M.M.; that the mother had starved or otherwise maltreated D.H.M.; that the mother suffers from a mental illness, disorder, or deficiency that causes her to be unable to care for the children; that the father had physically abused D.H.M.; that the father had withheld food from D.H.M.; and that the father had failed to protect the children from the mother’s abuse.
*1199 On August 17, 2010, the mother timely filed her notice of appeal in case no. 2091106. On August 24, 2010, the father filed a motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial. The juvenile court denied the father’s postjudgment motion on August 25, 2010. On September 3, 2010, the father timely filed his notice of appeal in case no. 2091130.
On January 17, 2011, after obtaining leave from this court, the father filed a motion for relief from the juvenile court’s August 12, 2010, judgment; that motion was filed pursuant to Rule 60(b)(2), Ala. R. Civ. P. The juvenile court denied that motion on February 8, 2011. On February 15, 2011, the father filed a motion to alter, amend, or vacate the denial of his Rule 60(b)(2) motion; the juvenile court denied that motion on the same date. Also on February 15, 2011, the father filed a second motion for relief from the August 12, 2010, judgment. That motion was filed pursuant to Rule 60(b)(6), Ala. R. Civ. P.; the father did not obtain leave of this court to file that second Rule 60(b) motion. The juvenile court denied that motion on the same date it was filed.
On March 1, 2011, the father filed a petition for a writ of mandamus seeking relief from the denial of his Rule 60(b) motions (case no. 2100496). This court elected to treat the father’s petition as an appeal (see supra note 1).

Case nos. 2091106 and 2091130

The Alleged Lack of Service on the Mother

Because it touches on the jurisdiction of the juvenile court, we first address the mother’s argument that she was not properly served with notice of the petitions to terminate her parental rights in compliance with Rule 4, Ala. R. Civ. P. Service of process on individuals is governed by Rule 4(c)(1), Ala. R. Civ. P., which provides:
“(c) Upon Whom Process Served. Service of process, except service by publication as provided in Rule 4.3, shall be made as follows:
“(1) Individual. Upon an individual, other than a minor or an incompetent person, by serving the individual or by leaving a copy of the summons and the complaint at the individual’s dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and the complaint to an agent authorized by appointment or by law to receive service of process.”[2]
Our supreme court has recognized that
“[o]ne of the requisites of personal jurisdiction over a defendant is ‘perfected service’ of process giving notice to the defendant of the suit being brought.’ ‘When the service of process on the defendant is contested as being improper or invalid, the burden of proof is on the plaintiff to prove that service of process was performed correctly and legally.’ A judgment rendered against a defendant in the absence of personal jurisdiction over that defendant is void.”
Horizons 2000, Inc. v. Smith, 620 So.2d 606, 607 (Ala.1993) (citations omitted).
It was undisputed before the juvenile court that process for the mother was left with the father at the family’s home on June 22, 2009. The mother asserts that, at the time of that service, she and the father had separated; that she no longer lived in *1200 the family’s home; and that the father was not authorized to accept service on her behalf. Thus, the mother asserts, she was never properly served with notice of the termination proceedings. Accepting the mother’s assertions as true, we nevertheless conclude that the mother has waived any claim of error resulting from the alleged lack of proper service.
The record contains a copy of a “Motion to Stay Proceedings,” filed by the mother in the juvenile court on July 21, 2010. In that motion, the mother did not raise the issue of the juvenile court’s lack of personal jurisdiction over her as a result of the lack of service of process. As recognized in Persons v. Summers, 274 Ala. 673, 681, 151 So.2d 210, 214-15 (1963):
“[T]he allegation of the bill shows that ‘complainants requested a continuance of said hearing which was granted.... ’ Service of process is not essential if the party intended to be served appears and defends and submits himself to the jurisdiction of the court. The purpose of process is to bring the defendant into court and may be by him waived.... We consider the appearance requesting a continuance to be a general appearance because we have said that if a defendant intends to rely on want of jurisdiction over his person, he must appear, if at all, for the sole purpose of objecting to the jurisdiction of the court. An appearance for any other purpose is usually considered general.”
As in Persons v. Summers, supra, the mother’s initial filing in response to the petitions to terminate her parental rights was the motion to continue or to stay the proceedings filed on July 21, 2010. In that motion, the mother asserted no challenge to the juvenile court’s exercise of personal jurisdiction over her, and, thus, she is deemed to have made a general appearance in the action and to have submitted to the jurisdiction of the juvenile court. As a result, any claim as to error occurring in the service of process on the mother is waived.

The Motions to Stay the Termination Hearing

The mother and the father both assert that allowing the termination hearing to proceed while the criminal charges against them were pending violated their constitutional rights against self-incrimination, as provided by the Fifth Amendment to the United States Constitution, and that the juvenile court exceeded its discretion in denying their motions to stay the termination hearing until after the resolution of their criminal trials.
“This Court stated in Ex parte Baugh, 530 So.2d 238, 241 (Ala.1988):
“ ‘Under the Fifth Amendment to the Constitution of the United States, “no person ... shall be compelled in any criminal case to be a witness against himself.” The privilege against self-incrimination must be liberally construed in favor of the accused or the witness, Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), and is applicable not only to federal proceedings but also to state proceedings, Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). “The fact that the privilege is raised in a civil proceeding rather than a criminal prosecution does not deprive a party of its protection.” Wehling v. Columbia Broadcasting System, 608 F.2d 1084 (5th Cir.1979), citing with approval Lefkowitz v. Cunningham, 431 U.S. 801, 9[7] S.Ct. 2132, 53 L.Ed.2d 1 (1977); McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924).’
“The United States Constitution, however, does not mandate that under all circumstances the civil proceedings in *1201 which the privilege against self-incrimination is asserted be stayed; whether to stay those proceedings is within the trial court’s discretion.
‘“While the Constitution does not require a stay of civil proceedings pending the outcome of potential criminal proceedings, a court has the discretion to postpone civil discovery when “justice requires” that it do so “to protect a party or persons from annoyance, embarrassment, oppression, or undue burden or expense.” Rule 26(c), Ala. R. Civ. P.’
“Ex parte Coastal Training Inst., 583 So.2d 979, 980-81 (Ala.1991).
“In the present case, three issues must be addressed to determine if a stay in the civil divorce proceedings based on Fifth Amendment concerns in a pending criminal action is warranted: (1) whether the civil proceeding and the criminal proceeding are parallel, see Ex parte Weems, 711 So.2d 1011, 1013 (Ala.1998); (2) whether the moving party’s Fifth Amendment protection against self-incrimination will be threatened if the civil proceeding is not stayed, see Ex parte Windom, 763 So.2d 946, 950 (Ala.2000); and (3) whether the requirements of the balancing test set out in Ex parte Baugh, 530 So.2d at 244, and Ex parte Ebbers, 871 So.2d 776, 789 (Ala.2003), are met.”
Ex parte Rawls, 953 So.2d 374, 378 (Ala.2006).
The mother and the father also assert that the juvenile court improperly applied the three factors set forth in Ex parte Rawls, supra. The competing actions at issue in Rawls were a civil divorce action, in which the wife alleged that the husband had stalked her and had been physically and verbally abusive to her throughout the marriage, and a criminal action against the husband involving felony charges of criminal mischief, criminal trespass, and stalking. Id. at 380-81. The husband moved to stay the divorce proceedings, asserting that a civil trial would violate his Fifth Amendment privilege against self-incrimination; the trial court denied the motion, and the husband petitioned for a writ of mandamus. Id. at 377. This court denied his petition without an opinion. See Ex parte Rawls (No. 2040634, June 21, 2005), 945 So.2d 504 (Ala.Civ.App.2005) (table). The husband then filed a petition for a writ of mandamus in the supreme court. Id.
In addressing whether the civil and criminal actions were parallel proceedings, the supreme court stated that “a divorce action in which there are allegations of abuse, harassment, threats, and intimidation and a felony stalking charge could not be more parallel.” Id. at 380-81. The court found it significant that, in support of the felony stalking charge, the state would likely rely on some of the same evidence presented in the divorce action. Id. at 381. The court held that, “[bjecause that criminal proceeding and the divorce proceeding have some overlapping acts, they must be considered parallel proceedings. Therefore, [the husband’s] motion for a stay cannot be denied on the grounds that these are not parallel proceedings.” Id. at 380.
We note that the civil and criminal proceedings at issue in these appeals, i.e., the termination hearing and the action stemming from the felony child-abuse charges, were premised upon identical allegations. In both the termination actions and the criminal actions, the mother and the father were alleged to have physically abused D.H.M. by hitting or beating her; to have neglected her, presumably by failing to provide her with an adequate amount of food; and/or to have failed to protect her from abuse. Based on our review of the record, those are the same *1202 allegations on which DHR premised its termination petitions against the mother and the father. The evidence presented in both the civil and the criminal actions, therefore, was expected to be substantially similar, if not identical. As in Ex parte Rawls, supra, we conclude that the termination proceedings and the criminal proceedings were parallel.
The second factor identified in Rawls, supra, to be considered in determining whether the moving party is entitled to a stay is whether the moving party’s Fifth Amendment protection against self-incrimination will be threatened if the civil proceeding is not stayed. Ex parte Rawls, 958 So.2d at 381 (citing Ex paHe Window, 763 So.2d 946, 950 (Ala.2000)). In Ex parte Rawls, our supreme court stated:
“To sustain a moving party’s Fifth Amendment right against self-incrimination, ‘ “it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.” ’ ”
953 So.2d at 381 (quoting Ex parte Baugh, 530 So.2d 238, 241 (Ala.1988), quoting in turn Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951)).
At the termination hearing, the mother asserted her Fifth Amendment right against self-incrimination in response to numerous questions, including: why she and the father had separated; whether she was living in a shelter for abused and battered women; why she had entered DHR’s custody as a child; whether, as a child, her mother had physically abused her; whether she had been sexually abused as a child; whether she had been indicted by a grand jury and, if so, why; on what charges she had been incarcerated; whether she had a history of mental-health problems and, if so, the extent and details of that history; whether she or the father had ever locked or chained the refrigerator to prevent the children from obtaining food from it; whether D.H.M. had a habit of getting up at night in search of food; whether she or the father had ever locked the children in their rooms; and whether she had ever abused or neglected the children.
At the termination hearing, the father asserted his Fifth Amendment right against self-incrimination to numerous questions, including: why he and the mother had separated; on what charges he had been incarcerated; whether he had ever been concerned for the health of his children during the time they had lived with the mother and/or him; whether, in his opinion, D.H.M. had ever appeared malnourished; whether he had ever placed a lock on the refrigerator; whether he had ever struck his children; whether he had ever been afraid of the mother or afraid that she might harm one of the children; and whether the mother had ever threatened to harm herself or commit suicide.
It is clear that responsive answers by the mother or the father to the above questions could be highly relevant to the criminal charges that were pending against them at the time of the termination hearing. Thus, under the circumstances existing at the time of the termination hearing, the mother and the father clearly had reason to believe that responsive answers to the questions posed to them “ ‘might be dangerous because injurious disclosure could result.’ ” Ex parte Baugh, 530 So.2d at 241 (quoting Hoffman v. United States, 341 U.S. at 486. Therefore, we conclude that the mother’s and the father’s Fifth Amendment rights *1203 against self-incrimination were threatened by the termination proceeding and by the juvenile court’s denial of the requested stay.
We next must determine whether the mother’s and the father’s Fifth Amendment rights outweigh the potential prejudice to the other party in the civil proceeding. See Ex parte Rawls, 953 So.2d at 378 (discussing the balancing test set out in Ex parte Baugh, 530 So.2d at 244, and Ex parte Ebbers, 871 So.2d 776, 789 (Ala.2003)). In Ex parte Ebbers, supra, our supreme court identified a list of factors to be considered in applying the balancing test; those factors include, but are not limited to:
“1. The interest of the plaintiff in proceeding expeditiously with the civil litigation, or any particular aspect of it, and the potential prejudice to the plaintiff of a delay in the progress of that litigation.
“2. The private interest of the defendant and the burden that any particular aspect of the proceedings may impose on the defendant.
“3. The extent to which the defendant’s Fifth Amendment rights are implicated/the extent to which the issues in the criminal case overlap those in the civil case.
“4. The convenience of the court in the management of its cases, and the efficient use of judicial resources.
“5. The interest of persons not parties to the civil litigation.
“6. The interest of the public in the pending civil and criminal litigation.
“7. The status of the criminal case, including whether the party moving for the stay has been indicted.
“8. The timing of the motion to stay.”
871 So.2d at 789-90 (citations to federal cases omitted). See also Ex parte 62 So.3d 531, 535 (Ala.Civ.App.2010) (listing and applying the factors from Ex parte Ebbers, supra, and concluding that the juvenile court did not improperly deny the mother’s motion for a stay of a pendente lite hearing in a dependency action but noting that the juvenile court had stayed the final custody hearing).
In considering the first factor, i.e., the interest of the plaintiff in proceeding expeditiously with the civil litigation, Ex parte Rawls instructs that “the important aspect of this factor is whether [the plaintiffs] civil action against [the defendant] will be damaged by the stay; in other words, will [the plaintiffs] case against [the defendant] be weakened by the passage of time because of lost evidence or witnesses?” 953 So.2d at 385. DHR did not argue before the juvenile court that the issuance of a stay would prejudice its case, i.e., that the issuance of a stay would pose a threat of lost evidence or witnesses in the termination hearing. Therefore, there was no evidence before the juvenile court to indicate that this factor weighed against staying the termination hearing.
We have already concluded that the civil and criminal proceedings substantially overlap and significantly threaten the mother’s and the father’s Fifth Amendment rights. Additionally, it was undisputed that, at the time of the termination hearing, both the mother and the father had been indicted on felony child-abuse charges. Thus, those factors weighed heavily in favor of staying the termination hearing.
DHR argued before the juvenile court that the children’s need for permanence greatly outweighed any right to a stay the mother and the father may have had. We agree with DHR that the children deserve permanency; permanency, however, may not be achieved at any cost. Additionally, the evidence established that the children *1204 were settled and thriving in their placement with relatives, and no evidence was presented to indicate that that placement was unstable or at risk of being disrupted. Further, the paternal aunt and uncle with whom the children had been placed indicated that they intended to wait until the juvenile court had resolved all issues of parental rights before initiating any adoption proceedings.
Thus, staying the termination hearing until the criminal proceedings had been resolved was unlikely to prejudice the children other than to continue to weaken any bond they may have had with the mother and the father by continuing a successful placement with the paternal aunt and uncle. That potential harm, however, is outweighed by the harm resulting from the permanent and irrevocable termination of the entire parent-child relationship, which termination the mother and the father opposed but were unable to defend against without sacrificing their constitutional rights. “Requiring a party to surrender one constitutional right in order to assert another is not allowed.” Lowe v. Lowe, 561 So.2d 240, 243 (Ala.Civ.App.1990).
In its brief filed with this court, DHR also asserts that the mother and the father did not timely seek a stay of the termination hearing and, therefore, that the juvenile court was within its discretion in denying their motions. We disagree. The mother and the father sought a stay within three weeks of DHR’s filing the petitions to terminate their parental rights. See, e.g., Ex parte White, 551 So.2d 923, 924-25 (Ala.1989) (concluding, on petition for a writ of mandamus, that trial court should have stayed civil action because defendant, who had failed to respond to discovery requests and who did not seek a stay until after he had been compelled to respond to discovery, had not waived his right to assert his Fifth Amendment rights). We, therefore, reject DHR’s argument that the mother and the father failed to timely seek a stay.
Based on our review of the record, we conclude that the termination hearing and the criminal proceedings were parallel proceedings; that the mother’s and the father’s constitutional rights against self-incrimination were threatened by the juvenile court’s denial of the stay; and that, after balancing the constitutional rights of the mother and the father against the prejudice that would have resulted from postponing the termination hearing, the mother’s and the father’s constitutional rights were the weightier concerns in this case. Thus, all three of the factors identified in Ex parte Rawls, supra, weigh in favor of the stay.
The very purpose of the termination hearing in this case was to determine whether the parental rights of the mother and the father were to remain intact. Cf. Carter v. Drumm, 700 S.W.2d 423, 424 (Ky.Ct.App.1985) (refusing to grant a motion to stay a dependency action pending resolution of criminal proceedings because the mother and the father were not risking a loss of all parental rights in that dependency action as the appellate court recognized they would if faced with a termination of their parental rights). Unlike the parents in Carter, supra, the parents in this case were faced with a total and irrevocable loss of their parental rights. Without waiving their Fifth Amendment rights against potentially incriminating themselves, the mother and the father were unable to significantly aid in the defense of their parental rights. Additionally, even by invoking their Fifth Amendment rights, the mother and the father were forced to expose themselves to an adverse inference of guilt. See, e.g., Ex parte Rawls, 953 So.2d at 383 (a civil court is entitled to draw adverse inferences *1205 when a party or witness invokes his or her Fifth Amendment right as to a particular question (citing Baxter v. Palmigiano, 425 U.S. 308, 317-18, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976))).
We therefore conclude that the juvenile court exceeded its discretion in denying the mother’s and the father’s motions to stay the termination hearing. We reverse the judgment of the juvenile court and remand the cause for further proceedings consistent with this opinion. Because of our resolution of the constitutional issue presented, we pretermit consideration of the other issues raised by the mother and the father on appeal.

Case no. 21004,96

On January 17, 2011, the father sought leave from this court to seek relief from the juvenile court’s judgment, pursuant to Rule 60(b)(2), Ala. R. Civ. P. See Rule 60(b), Ala. R. Civ. P. (“Leave to make the motion need not be obtained from any appellate court except during such time as an appeal from the judgment is actually pending before such court.”). This court granted the father’s motion.
The father thereafter filed, pursuant to Rule 60(b)(2), Ala. R. Civ. P., a motion seeking relief from the juvenile court’s August 12, 2010, judgment terminating his parental rights. Because we granted the father’s request to seek relief from the juvenile court, the date of the father’s motion, filed pursuant to Rule 60(b)(2), is “deemed to have been made in the trial court as of the date upon which leave to make the motion was sought in the appellate court.” Rule 60(b), Ala. R. Civ. P. Thus, the father is deemed to have filed his motion, pursuant to Rule 60(b)(2), on January 17, 2011.
In his Rule 60(b)(2) motion, the father asserted that he had been acquitted of the felony child-abuse charges in January 2011 and that the acquittal constituted “newly discovered evidence” relevant to DHR’s petitions to terminate his parental rights. On February 8, 2011, the juvenile court conducted a hearing on the father’s Rule 60(b)(2) motion, and, on that same date, it denied the father’s motion.
On February 15, 2011, the father filed a motion to alter, amend, or vacate the denial of his Rule 60(b)(2) motion. The juvenile court purported to deny that motion on the same date. Also on February 15, 2011, the father filed a second motion for relief from the judgment, this one pursuant to Rule 60(b)(6), Ala. R. Civ. P. In that second motion, the father stated that “[t]he grounds for relief are as they were presented in [the father’s] motion pursuant to Rule 60(b)(2).” The juvenile court denied the father’s second motion on the same date it was filed.
On March 1, 2011, the father filed a petition for a writ of mandamus seeking relief from the denial of his Rule 60(b) motions. This court has elected to treat the father’s petition as an appeal. See Evans v. Sharp, 617 So.2d 1039 (Ala.Civ.App.1993) (holding that appellate courts can review the denial of a Rule 60(b) motion by appeal even if the appellant mistakenly files a petition for a writ of mandamus). We conclude, however, that this court cannot consider the father’s appeal because it was not timely filed. The juvenile court denied the father’s Rule 60(b)(2) motion on February 8, 2011. The father thereafter had 14 days to appeal from that judgment. See Rule 28(C), Ala. R. Juv. P. The time for filing the appeal was not tolled by the filing of any of the father’s subsequent motions in the juvenile court, because those motions were in the nature of successive Rule 60(b) motions to “reconsider” the denial of the original Rule 60(b) motion, which our rules of procedure do not allow. See Ex parte Keith, 771 So.2d *1206 1018, 1021-22 (Ala.1998). The father did not file his notice of appeal until after the deadline had expired; hence, this court has no jurisdiction to consider his appeal. See Rule 2(a)(1), Ala. R.App. P.
We nevertheless note that the father sought in his Rule 60(b) motion to have the judgment terminating his parental rights vacated. This court has now reversed that judgment for the reasons set out above. Accordingly, the father has, in essence, obtained the relief that he was seeking, thus rendering his Rule 60(b) motion and his appeal from the denial of that motion moot.
Based on the foregoing, we dismiss the father’s appeal in case no. 2100496.

Conclusion

In case nos. 2091106 and 2091130, we reverse the judgment of the juvenile court and remand the cases for further proceedings consistent with this opinion. In case no. 2100496, we dismiss the appeal for lack of appellate jurisdiction.
2091106 — REVERSED AND REMANDED.
2091130 — REVERSED AND REMANDED.
2100496 — APPEAL DISMISSED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. In case no. 2100496, the father filed a petition for a writ of mandamus; however, this court elected to treat that petition as an appeal. See Evans v. Sharp, 617 So.2d 1039 (Aia.Civ.App. 1993) (holding that appellate courts can review the denial of a Rule 60(b) motion by appeal even if the appellant mistakenly files a petition for a writ of mandamus).

. "Except as otherwise provided by the Alabama Rules of Juvenile Procedure and this section, service of process of termination of parental rights actions shall be made in accordance with the Alabama Rules of Civil Procedure.” Ala.Code 1975, § 12-15-318(a).