THOMAS, Judge.
In December 2011, the Marshall County Department of Human Resources (“DHR”) filed a petition in the Marshall Juvenile Court (“the juvenile court”) seeking to terminate of the parental rights of J.V. (“the father”) and M.M.T. (“the mother”) to J.J.V. (“the child”). On February 7, 2012, the juvenile court appointed an attorney for the father. In April 2012, the attorney representing the father in a criminal proceeding filed what he styled as a “limited” notice of appearance and a motion seeking that the termination-of-parental-rights proceeding be stayed pending the resolution of the criminal proceeding against the father. The juvenile court granted that motion.
It appears that the child’s foster parents had filed a petition to terminate the parental rights of the father on January 5, 2011; that petition was assigned case no. JU-09-300067.03. The petition in case no. JU-09-300067.03 was ordered to be consolidated with DHR’s petition, which had been assigned case no. JU-09-300067.04, in March *371 2013. In April 2013, DHR sought permission to serve the mother and the father by publication, which the juvenile court granted. However, after service by publication was accomplished, DHR learned the whereabouts of the father; DHR then moved to perfect personal service on the father. DHR accomplished personal service on the father on or about September 9, 2013.
The trial on the termination petitions was held on September 23, 2013. The father did not appear at the trial, although he was represented by counsel. According to the testimony of Tracey Burrage, the DHR caseworker assigned to the child’s case, the father had been incarcerated since October 5, 2011, either on criminal charges arising from allegations that he had sexually abused the child, which charges had since been dismissed, or on an immigration hold. Before that date, Bur-rage said, the father had lived in at least five different homes after he moved to Marshall County from Florida in, at the earliest, April 2009. Burrage testified that she had ordered home studies on three of the five homes in which the father had lived; however, she said, none of the homes had been approved.
The father had had visitation with the child until shortly before his incarceration. The visits were, at first, supervised; however, at some point, the father had unsupervised visits with the child in his home. Burrage said that the father had missed about half of his scheduled visits; she said that the father had complained that he could not get to Monday visits because of his work schedule. The record reflects that the father had been employed at different short-term jobs during the majority of the time he had lived in Alabama. Bur-rage testified that she had supervised some, but not all, of the father’s supervised visits. She described the visits as “strained” and stated that the child did not interact with the father during visitation. She also said that the child had cried “a lot” during visits and that she had had to require the foster mother to accompany the child to the visits to encourage the child to get into the automobile to go to the visits.
The juvenile court entered the following order on September 24, 2013:
“A Termination of Parental Rights hearing was conducted on September 23, 2013. Present in the courtroom were the following individuals: Ms. Jamie Logan, Guardian Ad litem for the minor child; Ms. Tracy Burrage, Marshall County Department of Human Resources; Mr. Greg Price, counsel for mother of the child; Mr. Shane Holloway, counsel for father of the child; Mr. James Berry, attorney for the Marshall County Department of Human Resources; Mr. Brett A. Hammock, attorney for [M.B.] and [B.B.], intervening foster parents; [M.B.], intervening foster parent[,] and [B.B.], intervening foster parent.
“Counsel for mother and father appeared objecting to termination and denying that grounds existed warranting termination of parental rights. Therefore, a hearing was conducted. After consideration of the pleadings and evidence presented in this matter it is hereby ORDERED, ADJUDGED and DECREED as follows:
“1. The parental rights of the child’s mother, [M.M.T.], are hereby TERMINATED.
“2. The Court declines to terminate the parental rights of the child’s father, [J.V.].
“3. The costs in this matter are remitted.”
(Capitalization in original.)
DHR filed a motion seeking reconsideration of the juvenile court’s judgment. *372 That motion was denied by the juvenile court on October 30, 2013; DHR filed a notice of appeal on October 31, 2013. Because the judgment failed to include a disposition as to the custody of the child, we issued an order remanding the cause to the juvenile court for it to add to its judgment a provision relating to the disposition of the child. The juvenile court complied with our remand instructions on March 18, 2014, by ordering that the child remain in the custody of DHR, and the judgment became final on that date. DHR’s October 31, 2013, notice of appeal also became effective on that date. See Rule 4(a)(4), Ala. R. Civ. P.
DHR argues on appeal that the evidence it presented at trial clearly and convincingly supported the conclusion that the father’s parental rights should have been terminated. DHR contends that it proved that the father moved around frequently and that he had not been able to maintain a stable home, that he had completed only one of two classes DHR had required him to complete, that his visits with the child had been “strained” when they occurred, and that he had been incarcerated since October 2011 and had not seen the child since then. Thus, DHR contends, the evidence supports a conclusion that the father has not adjusted his circumstances to meet the needs of the child and that he is unable or unwilling to meet his obligation to provide a stable home for the child.
Because the juvenile court failed to make any findings of fact in its judgment, DHR surmises that the juvenile court might have concluded that the father had not been properly served with its termination petition. In fact, at the trial, the father’s attorney indicated that the father had been served on September 9, 2013, only 14 days before the trial. The father’s attorney also commented that the father had until the end of the day on which the trial was set to timely answer the petition, a fact which the attorney for DHR admitted. See Rule 1(B), Ala. R. Juv. P. (“In all juvenile courts an answer or other pleading filed by a party pursuant to Rule 12, Alabama Rules of Civil Procedure, shall be filed within the 14-day period provided in Rule 12(dc), Alabama Rules of Civil Procedure, regardless of whether the juvenile courts are circuit courts or district courts.”); see also Rule 12(dc), Ala. R. Civ. P. (stating that the 30-day period provided for filing an answer or other pleading under Rule 12 is reduced to 14 days for most actions in district court).
The attorney for M.B. and B.B. (“the foster parents”) argued that the father had appeared in the action when, in April 2012, his attorney in the criminal proceeding sought and received a stay of the termination-of-parental-rights action initiated by DHR pending resolution of the criminal charges against the father. At the conclusion of the trial, the juvenile court stated: “He has got until today to [answer the petition],” indicating that, as DHR suggests, the juvenile court felt that the delay in personally serving the father with the petition to terminate his parental rights precluded its ability to enter a judgment terminating those rights.
On appeal, DHR vehemently objects to the juvenile court’s apparent conclusion that the late perfection of personal service of the father barred the juvenile court from acting on its petition to terminate the father’s parental rights. DHR relies on two procedural facts: the father’s filing of the motion seeking a stay of the termination action in April 2012 and the successful publication of notice after the juvenile court’s entry of an order authorizing service by publication. We find the first procedural fact dispositive of this issue.
*373 A party can waive an insufficiency in or a lack of service of process if he or she makes a general appearance in an action without objecting to the insufficiency in or the lack of proper service. See also Persons v. Summers, 274 Ala. 673, 680, 151 So.2d 210, 214-15 (1963) (“We consider the appearance requesting a continuance to be a general appearance because we have said that if a defendant intends to rely on want of jurisdiction over his person, he must appear, if at all, for the sole purpose of objecting to the jurisdiction of the court.”). This case is similar to R.M. v. Elmore County Department of Human Resources, 75 So.3d 1195, 1200 (Ala.Civ.App.2011), in which this court concluded that a mother’s motion seeking a stay of a termination-of-parental-rights proceeding was a general appearance in the action and that, by failing to raise a challenge to personal jurisdiction or a lack of service of process in her first appearance, the mother had waived those issues. The father’s motion seeking a stay of DHR’s termination-of-parental-rights action, like the motion filed by the mother in R.M., was a general appearance in the action, and it contained no objection to a lack of service of process. Thus, based on the comments made by the juvenile court at trial, we conclude that the juvenile court incorrectly determined that personal service on the father was still required and that the timing of that personal service prevented it from considering DHR’s termination-of-parental-rights petition as to the father.
Because we have concluded that the juvenile court did not lack jurisdiction over the father because of the timing of the personal service on the father, we reverse the judgment of the juvenile court insofar as it apparently declined to address the merits of DHR’s petition to terminate the father’s parental rights. Because the juvenile court, and not this court, is the fact-finding body in a termination-of-parental-rights action, we remand the cause for the juvenile court to consider, based on the evidence already presented, the merits of DHR’s termination-of-parental-rights petition regarding the father. ■
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.