Rel: December 13, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

―――――――――――――――

### CL-2024-0546, CL-2024-0547, CL-2024-0548, CL-2024-0549, and CL-2024-0550

―――――――――――――――

## A.W.

### v.

## Jefferson County Department of Human Resources

**Appeals from Jefferson Juvenile Court
(JU-21-154.02, JU-21-155.02, JU-21-156.02,
JU-21-157.02, and JU-21-953.02)**

EDWARDS, Judge.

On October 11, 2023, the Jefferson County Department of Human Resources ("DHR") filed in the Jefferson Juvenile Court ("the juvenile court") petitions seeking to terminate the parental rights of A.W. ("the mother") to her children, K.L.T., A.C.T., K.T., A.T., and A.B.W. ("the

children"); those petitions were assigned case numbers JU-21-154.02, JU-21-155.02, JU-21-156.02, JU-21-157.02, and JU-21-953.02, respectively. In those petitions, DHR alleged, among other things, that the mother had committed a felony assault on K.T., see Ala. Code 1975, § 12-15-319(a)(5)c., and that the mother had "tortured, abused, cruelly beaten, or otherwise maltreated" K.T. See § 12-15-319(a)(3). The juvenile court set the termination-of-parental-rights petitions for a trial to be held on May 15, 2024.

On March 1, 2024, the mother filed motions seeking a stay of the termination-of-parental-rights actions, arguing that her Fifth Amendment right against self-incrimination would be unduly infringed by holding the trial on the termination-of-parental-rights petitions before the conclusion of the criminal trial on the felony child-abuse charges that the mother was facing. She contended that the allegations against her were "strictly contested" and that she could not "properly defend herself and participate in the litigation without being able to testify and present her own evidence." DHR opposed the mother's motions to stay the

termination actions. After a hearing on the motions, the juvenile court denied the motion.

The mother also made an oral motion for a stay at the commencement of the termination-of-parental-rights trial, which the juvenile court denied. After the conclusion of the trial, the juvenile court entered judgments terminating the mother's parental rights to the children. In her postjudgment motion, the mother argued that the juvenile court had erred in denying her motions to stay; the juvenile court denied that motion, and the mother timely appealed from the judgments.

On appeal, the mother raises one argument: the juvenile court erred in failing to stay the termination-of-parental-rights actions pending resolution of the mother's felony child-abuse charge. She contends that the criminal prosecution and the termination-of-parental-rights actions are parallel actions, that her constitutional right against self-incrimination was threatened by proceeding with the termination-of-parental-rights trial, and that the threat to her constitutional right against self-incrimination outweighed any potential harm to the children that might result from a delay in the termination-of-parental-rights

CL-2024-0546, CL-2024-0547, CL-2024-0548, CL-2024-0549, and CL-2024-0550

actions. She primarily relies on R.M. v. Elmore County Department of Human Resources, 75 So. 3d 1195, 1201 (Ala. Civ. App. 2011), and Ex parte Ebbers, 871 So. 2d 776 (Ala. 2003), in support of her argument.[1]

Initially, we recognize that "the United States Constitution ... does not mandate that under all circumstances the civil proceedings in which the privilege against self-incrimination is asserted be stayed; whether to stay those proceedings is within the trial court's discretion." Ex parte Rawls, 953 So. 2d 374, 378 (Ala. 2006). Our supreme court has explained that,

> "[w]hile the Constitution does not require a stay of civil proceedings pending the outcome of potential criminal proceedings, a court has the discretion to postpone civil discovery when 'justice requires' that it do so 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.' Rule 26(c), Ala. R. Civ. P."

---

[1]In its brief to this court, DHR lists, but does not discuss, the application of the factors regarding Fifth Amendment stays that are set out in Ex parte Ebbers, but it does not mention R.M. Instead, despite the fact that the mother does not challenge the sufficiency of the evidence supporting the termination-of-parental-rights judgments, DHR focuses its brief on the application of the ore tenus rule and argues that the juvenile court's factual findings in those judgments are supported by clear and convincing evidence.

4

Ex parte Coastal Training Inst., 583 So. 2d 979, 980-81 (Ala. 1991). When considering whether a court has abused its discretion in denying a motion to stay,

> "'[t]hree issues must be addressed to determine if a stay in ... civil ... proceedings based on Fifth Amendment concerns in a pending criminal action is warranted: (1) whether the civil proceeding and the criminal proceeding are parallel, see Ex parte Weems, 711 So. 2d 1011, 1013 (Ala. 1998); (2) whether the moving party's Fifth Amendment protection against self-incrimination will be threatened if the civil proceeding is not stayed, see Ex parte Windom, 763 So. 2d 946, 950 (Ala. 2000); and (3) whether the requirements of the balancing test set out in Ex parte Baugh, 530 So. 2d [238,] 244[ (Ala. 1988)], and Ex parte Ebbers, 871 So. 2d 776, 789 (Ala. 2003), are met.'"

R.M., 75 So. 3d at 1201 (quoting Ex parte Rawls, 953 So. 2d at 378).

The elements of the balancing test set out in Ex parte Ebbers are

> "1. The interest of the plaintiff in proceeding expeditiously with the civil litigation, or any particular aspect of it, and the potential prejudice to the plaintiff of a delay in the progress of that litigation.

> "2. The private interest of the defendant and the burden that any particular aspect of the proceedings may impose on the defendant.

> "3. The extent to which the defendant's Fifth Amendment rights are implicated/the extent to which the issues in the criminal case overlap those in the civil case.

"4. The convenience of the court in the management of its cases, and the efficient use of judicial resources.

"5. The interest of persons not parties to the civil litigation.

"6. The interest of the public in the pending civil and criminal litigation.

"7. The status of the criminal case, including whether the party moving for the stay has been indicted.

"8. The timing of the motion to stay."

871 So. 2d at 789-90 (citations omitted).

In the juvenile court, DHR appeared to argue that the criminal proceeding and the termination-of-parental-rights actions were not parallel. Specifically, in its opposition to the mother's motions to stay filed in the juvenile court, DHR asserted that different rules of procedure, statutes, and caselaw applied to the termination-of-parental-rights actions and the criminal action. In addition, DHR contended that the two types of actions were completely independent proceedings.

Although DHR is correct that the criminal action and the termination-of-parental-rights actions are "completely independent" and distinct from one another and that they are governed by different

evidentiary burdens and rules of procedure, those facts are not determinative of whether the juvenile court should have granted the mother's requests for a stay. Instead, this court is tasked with determining whether the two actions were parallel, not identical. R.M., 75 So. 3d at 1201. As we explained in R.M., when they are premised upon identical allegations and will involve the presentation of "substantially similar, if not identical" evidence, a termination-of-parental-rights action and a criminal action for felony child abuse are indeed parallel. 75 So. 3d at 1202. The mother points out that a large portion of the evidence adduced at the termination-of-parental-rights trial involved medical testimony and records relating to the injuries that the child had allegedly sustained at the hands of the mother and testimony and documentary evidence relating to the criminal charges that had been brought against the mother. Thus, we conclude that the termination-of-parental-rights actions are parallel to the mother's criminal action for felony child abuse.

Next, we must determine whether the mother's right against self-incrimination would be threatened by the failure to stay the termination-of-parental-rights actions. Id. at 1202. Although DHR is correct in

7

asserting that the mother did not appear at the termination-of-parental-rights trial and, therefore, no questions were posed to her and she did not have to invoke her right against self-incrimination as the parents did in R.M., a party seeking a Fifth Amendment stay is not first required to submit to questioning. See Ex parte Rawls, 953 So. 2d at 381-82 (granting a petition for the writ of mandamus to stay a divorce trial so that the husband's right against self-incrimination would not be threatened by having to participate in the divorce trial and having to assert his Fifth Amendment privilege in response to certain questions, the answers to which he might deem potentially incriminating). The evidence presented by DHR at the termination-of-parental-rights trial primarily included evidence establishing that K.T. had suffered physical abuse, which DHR argued was at the hands of the mother. In light of the evidence presented at the trial and DHR's reliance on the alleged abuse as grounds for termination, any questioning of the mother, had she attended the trial and chosen to testify, would likely have included questions aimed at adducing whether the mother had committed the alleged abuse. See id. at 381 (explaining that a person's "Fifth

Amendment right against self-incrimination is threatened when a court requires the party to participate in a deposition or a trial, allowing the party to remain quiet only for specific questions that may incriminate him or her"). Moreover, as we explained in R.M., allowing the trial to continue would place the mother in a position whereby, "[w]ithout waiving [her] Fifth Amendment rights against potentially incriminating [herself], [she would be] unable to significantly aid in the defense of [her] parental rights." 75 So. 3d at 1204. Therefore, the mother's right against self-incrimination was threatened by the termination-of-parental-rights trial.

The final analysis that we must perform is to balance the interests of the parties. We note that, generally, "in balancing the interests of the parties, we must favor the constitutional privilege against self-incrimination over the interest in avoiding the delay of a civil proceeding." Ex parte Coastal Training Inst., 583 So. 2d at 981. We have stated that, although a dependent child's need for permanency is a consideration, it does not necessarily outweigh the right to a Fifth Amendment stay, commenting that "permanency ... may not be achieved

9

CL-2024-0546, CL-2024-0547, CL-2024-0548, CL-2024-0549, and CL-2024-0550

at any cost." R.M., 75 So. 3d at 1203. However, in cases involving dependent children, we have treated the state's interest in protecting those children from a substantial risk of harm as a significant and weighty consideration in the balancing test. See Ex parte M.M., 347 So. 3d 262 (2021); Ex parte M.J.W., 62 So. 3d 531 (Ala. Civ. App. 2010).

In R.M., this court reversed a judgment terminating the parental rights of the parents because the Elmore Juvenile Court had declined to stay the termination-of-parental-rights trial pending the resolution of the felony child-abuse charges against them. 75 So. 3d at 1205. We noted that "DHR [had] argued before the juvenile court that the children's need for permanence greatly outweighed any right to a stay the mother and the father may have had," but we cautioned that "permanency, however, may not be achieved at any cost." Id. at 1203. We further explained the lack of evidence indicating that the parent's children would be prejudiced by the delay caused by a stay of the termination-of-parental-rights proceeding, stating that

> "the evidence established that the children were settled and thriving in their placement with relatives, and no evidence was presented to indicate that that placement was unstable or at risk of being disrupted. Further, the [relatives] with

10

whom the children had been placed indicated that they intended to wait until the juvenile court had resolved all issues of parental rights before initiating any adoption proceedings.

"Thus, staying the termination hearing until the criminal proceedings had been resolved was unlikely to prejudice the children other than to continue to weaken any bond they may have had with the [parents] by continuing a successful placement with the [relatives]. That potential harm, however, is outweighed by the harm resulting from the permanent and irrevocable termination of the entire parent-child relationship, which termination the [parents] opposed but were unable to defend against without sacrificing their constitutional rights."

R.M., 75 So. 3d at 1203-04.

In M.J.W., M.J.W. moved the Baldwin Juvenile Court to stay a dependency proceeding that had been brought by the paternal aunt of her children pending the resolution of criminal charges against M.J.W. 62 So. 2d at 532-33. The Baldwin Juvenile Court stayed the dependency proceeding, in part, but ordered that the issue regarding the pendente lite custody of the children would be heard. Id. at 533. M.J.W. filed a petition for the writ of mandamus in this court, in which she requested a writ of mandamus ordering the Baldwin Juvenile Court to stay the pendente lite custody portion of the dependency proceeding. Id. We

11

explained that, "in determining whether the [Baldwin] [J]uvenile [C]ourt exceeded its discretion in failing to grant a stay of the pendente lite proceeding, we must balance [M.J.W.'s] interest in staying the civil proceeding in its entirety against the prejudice that might result by postponing the pendente lite proceeding until [M.J.W.'s] criminal charges are resolved." Id. at 535. We were particularly concerned with "the prejudice that might result to the children, as third parties, if the entirety of the civil proceeding was postponed until after the resolution of [M.J.W.'s] criminal charges." Id. at 536.

In making the decision to deny M.J.W.'s petition for the writ of mandamus, we stated:

> "Undoubtedly, the state's interest in protecting the children of this state from a substantial risk of harm is not simply a 'procedural consideration' that must automatically yield to [M.J.W.'s] Fifth Amendment rights. See Ex parte Baugh, 530 So. 2d 238, 242 (Ala. 1988). Our supreme court has stated that '[i]t is the court's duty to scrupulously guard and protect the interests of children,' Ex parte Fann, 810 So. 2d 631, 638 (Ala. 2001), and the stated purpose of the Alabama Juvenile Justice Act, codified at Ala. Code 1975, § 12-15-101 et seq., 'is to facilitate the care [and] protection ... of children who come under the jurisdiction of the juvenile court.' § 12-15-101(a). Furthermore, this court has recognized that the state has a compelling interest in protecting its children from harm. See E.H.G. v. E.R.G., [73 So. 3d 614, 628]

12

> (Ala. Civ. App. 2010). The juvenile court, by denying [M.J.W.'s] motion to stay the proceeding so that pendente lite custody of the children could be determined, recognized that the children, as third parties to the dependency action, had a substantial interest in the matter and that, in such circumstances, the juvenile court was required to proceed in a manner so as to protect the children from the substantial risk of harm. The juvenile court, by proceeding only on a pendente lite basis and by staying a final determination of dependency and custody of the children, effectively balanced its duty to scrupulously protect the children from the substantial risk of harm and the interest of the children in living in a home free from the substantial risk of harm against [M.J.W.'s] interest in postponing the entire civil proceeding until after resolution of the criminal charges."

M.J.W., 62 So. 3d at 536.

In Ex parte M.M., we considered whether M.M. had established a clear legal right to a stay of a termination-of-parental-rights action instituted against him pending resolution of a pending criminal prosecution against him. 347 So. 3d at 268-70. M.M., relying on R.M., contended that his children's need for permanency did not outweigh his right against self-incrimination because the permanency plan for his children was "adoption with no identified resource," indicating, he asserted, that the children would not "achieve 'speedy permanency.'" Id. at 269. We concluded, however, that because of evidence indicating that

13

the children suffered from psychological and behavioral issues, feared the father, and would likely have further issues if permanency were delayed, the children's right to permanency was weighty enough to overcome the father's right against self-incrimination. Id.

The record in the present case contains very little evidence to assist us in analyzing the potential prejudice that a delay would cause the children. Although the evidence presented at trial established that K.T. had been severely injured, allegedly by the mother, the other evidence regarding the children was sparse. Moniqueca Barfield, the children's caseworker testified that the four older children had indicated that they had some behavioral problems, like fighting amongst themselves and defying authority, that were being addressed in counseling or play therapy; she said that A.B.W., who had never lived with the mother, had exhibited no behavioral issues. According to Barfield, the permanency plan for all five children was to be adopted by their respective current foster parents. She explained that, although an attempt had been made to place the children together, that attempt had been unsuccessful, and the children were not housed together. She said that K.L.T. and K.T.

14

lived together in one foster home, that A.C.T. and A.T. lived together in a different foster home, and that A.B.W. lived in a separate foster home. The record also reflects that the mother is prohibited from having any contact with the children, all of whom have been in the custody of DHR since 2021.

In light of those facts, we conclude that R.M. supports the mother's argument that the juvenile court erred to reversal by denying the mother's requests for a stay pending resolution of her pending criminal charge for felony child abuse. The felony-child-abuse action and the termination-of-parental-rights actions were clearly parallel, and the mother's right against self-incrimination was substantially implicated by the trial of the termination-of-parental-rights actions. The record does not indicate that a stay would prejudice the children, who are in stable foster care and preadoptive placements. Unlike the situation in M.M., no evidence contained in the record indicates that the children, who have no contact with the mother, would suffer emotional distress or mental-health issues as a result of any delay in the trial of the termination-of-parental-rights actions. Accordingly, we reverse the judgments of the

15

CL-2024-0546, CL-2024-0547, CL-2024-0548, CL-2024-0549, and CL-2024-0550

juvenile court terminating the parental rights of the mother and remand the cases for proceedings consistent with this opinion.

CL-2024-0546 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

CL-2024-0547 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

CL-2024-0548 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

CL-2024-0549 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

CL-2024-0550 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Hanson, Fridy, and Lewis, JJ., concur.